SOCIETY INSURANCE and James Meyer, Inc.,
Plaintiffs-Respondents,

v.

LABOR & INDUSTRY REVIEW COMMISSION
and Gary Liska, Defendants,

WORK INJURY SUPPLEMENTAL BENEFIT FUND,
Defendant-Appellant.

Supreme Court

*No. 2008AP3135. Oral argument March 9, 2010.
—Decided July 8, 2010.*

2010 WI 68

(Also reported in 786 N.W.2d 385.)

For the defendant-appellant the cause was argued by *David A. Hart III,* assistant attorney general, with whom on the briefs was *J.B. Van Hollen,* attorney general.

For the plaintiffs-respondents there was a brief by *James W. Goonan, Grace M. Kulkoski, and Peterson, Johnson & Murray, S.C.,* Madison, and oral argument by *James W. Goonan.*

An amicus curiae brief was filed by *James A. Friedman, Eric J. Weiss, and Godfrey & Kahn, S.C.,* Madison, on behalf of the Wisconsin Insurance Alliance, and oral argument by *James A. Friedman.*

¶ 1. PATIENCE DRAKE ROGGENSACK, J. This case comes before us by certification from the court of appeals. The certified question is: "Whether retroactive application of Wis. Stat. §§ 102.17(4) and 102.66(1), as amended effective April 1, 2006, is unconstitutional."

¶ 2. On June 25, 1982, Gary Liska (Liska) sustained a work-related injury to his right leg that required amputation below the knee. Society Insurance Co. (Society), the insurer for James Meyer, Inc. (Meyer), paid worker's compensation benefits to Liska. Society paid temporary total disability benefits intermittently from June 25, 1982 through June 12, 1990, and permanent partial disability benefits, which were paid in advance on February 18, 1983. On February 25, 2004, Liska filed a claim for additional medical expenses.

450

¶ 3. Under the law in effect at the time of Liska's injury, Society's liability to pay Liska's benefits or treatment expense expired on June 12, 2002, pursuant to the 12–year statute of limitations. *See* Wis. Stat. § 102.17(4) (2003–04).[1] Therefore, any subsequent payments to Liska would have been paid from the Work Injury Supplemental Benefit Fund (the Fund). *See* Wis. Stat. § 102.66(1) (2003–04).[2] Subsequently, the legisla-

---

[1] Wisconsin Stat. § 102.17(4) (2003–04) states (emphasis added):

> The right of an employee, the employee's legal representative, or a dependent to proceed under this section shall not extend beyond 12 years from the date of the injury or death or from the date that compensation, other than treatment or burial expenses, was last paid, or would have been last payable if no advancement were made, whichever date is latest. In the case of occupational disease, *a traumatic injury resulting in the loss or total impairment of a hand or any part of the rest of the arm proximal to the hand or of a foot or any part of the rest of the leg proximal to the foot,* any loss of vision, any permanent brain injury, or any injury causing the need for a total or partial knee or hip replacement, there shall be no statute of limitations, *except that benefits or treatment expense becoming due after 12 years from the date of injury or death or last payment of compensation shall be paid from the work injury supplemental benefit fund* under s. 102.65 and in the manner provided in s. 102.66. Payment of wages by the employer during disability or absence from work to obtain treatment shall be deemed payment of compensation for the purpose of this section if the employer knew of the employee's condition and its alleged relation to the employment.

[2] Wisconsin Stat. § 102.66(1) (2003–04) states (emphasis added):

> In the event that there is an otherwise meritorious claim for occupational disease, *a traumatic injury resulting in the loss or total impairment of a hand or any part of the rest of the arm proximal to the hand or of a foot or any part of the rest of the leg proximal to the foot,* any loss of vision, any permanent brain injury, or any injury causing the need for a total or partial knee or hip replacement, *and the claim is barred solely by the statute of*

451

ture amended §§ 102.17(4) (2005–06)[3] and 102.66(1) (2005–06),[4] effective April 1, 2006, and in so doing, shifted the burden of payment of an employee's benefits

*limitations under s. 102.17(4), the department may, in lieu of worker's compensation benefits, direct payment from the work injury supplemental benefit fund* under s. 102.65 of such compensation and such medical expenses as would otherwise be due, based on the date of injury, to or on behalf of the injured employee. The benefits shall be supplemental, to the extent of compensation liability, to any disability or medical benefits payable from any group insurance policy whose premium is paid in whole or in part by any employer, or under any federal insurance or benefit program providing disability or medical benefits. Death benefits payable under any such group policy do not limit the benefits payable under this section.

[3] Wisconsin Stat. § 102.17(4) (2005–06) states (emphasis added):

Except as provided in this subsection, the right of an employee, the employee's legal representative, or a dependent to proceed under this section shall not extend beyond 12 years from the date of the injury or death or from the date that compensation, other than treatment or burial expenses, was last paid, or would have been last payable if no advancement were made, whichever date is latest. In the case of occupational disease; a traumatic injury resulting in the loss or total impairment of a hand or any part of the rest of the arm proximal to the hand or of a foot or any part of the rest of the leg proximal to the foot, any loss of vision, or any permanent brain injury; or a traumatic injury causing the need for an artificial spinal disc or a total or partial knee or hip replacement, there shall be no statute of limitations, except that benefits or treatment expense for an occupational disease becoming due after 12 years from the date of injury or death or last payment of compensation shall be paid from the work injury supplemental benefit fund under s. 102.65 and in the manner provided in s. 102.66 *and benefits or treatment expense for a traumatic injury becoming due after 12 years from that date shall be paid by the employer or insurer.* Payment of wages by the employer during disability or absence from work to obtain treatment shall be deemed payment of compensation for the purpose of this section if the employer knew of the employee's condition and its alleged relation to the employment.

[4] Wisconsin Stat. § 102.66(1) (2005–06) states:

452

or treatment expense for traumatic injuries becoming due after 12 years from the date of injury, death or last payment of compensation, from the Fund to the insurer or employer. 2005 Wis. Act 172, §§ 15, 62. The parties concede, for purposes of this appeal, that the legislature intended such changes to apply retroactively, thereby requiring Society to pay Liska's benefits or treatment expense becoming due after June 12, 2002.

¶ 4. The Fund appeals an order of the circuit court declaring the retroactive application of Wis. Stat. §§ 102.17(4) and 102.66(1) (2005–06),[5] "unconstitutional as being violative of due process and the contract clause."

¶ 5. We conclude that the retroactive application of Wis. Stat. §§ 102.17(4) and 102.66(1), as amended effective April 1, 2006, is unconstitutional as applied to Society for two reasons: (1) it violates Society's due

---

In the event that there is an otherwise meritorious claim for occupational disease, and the claim is barred solely by the statute of limitations under s. 102.17(4), the department may, in lieu of worker's compensation benefits, direct payment from the work injury supplemental benefit fund under s. 102.65 of such compensation and such medical expenses as would otherwise be due, based on the date of injury, to or on behalf of the injured employee. The benefits shall be supplemental, to the extent of compensation liability, to any disability or medical benefits payable from any group insurance policy whose premium is paid in whole or in part by any employer, or under any federal insurance or benefit program providing disability or medical benefits. Death benefits payable under any such group policy do not limit the benefits payable under this section.

[5] All references to Wis. Stat. §§ 102.17(4) and 102.66(1), as amended effective April 1, 2006, are to the 2005–06 version of the statutes. All other references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

process rights guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 1 of the Wisconsin Constitution; and (2) it substantially impairs Society's contractual obligation in violation of Article I, Section 10 of the United States Constitution and Article I, Section 12 of the Wisconsin Constitution.

## I. BACKGROUND

¶ 6. On June 25, 1982, Liska, while employed by Meyer, sustained a work-related injury that required amputation of his right leg below the knee. For this traumatic injury, Society, Meyer's insurer, paid Liska worker's compensation benefits. Specifically, Society paid temporary total disability benefits to Liska intermittently from June 25, 1982 to June 12, 1990, totaling $6,873.08. Society also paid permanent partial disability benefits to Liska, which accrued each week temporary total disability benefits were not paid. Society admitted liability for 337.5 weeks (6.49 years) of permanent partial disability and paid such benefits in an advance lump sum on February 18, 1983, which, less the interest credit of $5,537.99, totaled $24,837.01. It is undisputed that June 12, 1990 is the date of Society's last indemnity payment to Liska.

¶ 7. On February 25, 2004, Liska filed an additional worker's compensation claim for payment of treatment expenses totaling $14,364.94 plus transportation costs, along with an application for a hearing with the Department of Workforce Development Worker's Compensation Division (Department). Society answered alleging that Liska's claim was time-barred pursuant to the 12–year statute of limitations under Wis. Stat. § 102.17(4) (2003–04). Accordingly, it denied Liska's claim, and directed Liska to submit his

454

claim to the Fund pursuant to Wis. Stat. § 102.66(1) (2003–04). On September 16, 2004, an administrative law judge issued an order declaring Liska's claim as to Society barred by the statute of limitations and directed the Fund to pay $3,322.43 for various expenses incurred by Liska.

¶ 8. On July 27, 2006, the Fund began forwarding Liska's treatment expense invoices to Society for payment. Society filed an application for hearing. An administrative law judge for the Department held a hearing on the matter. On December 14, 2007, the Department issued an order concluding that pursuant to Wis. Stat. §§ 102.17(4) and 102.66(1) (2003–04) the 12–year statute of limitations ran on Liska's traumatic injury claim on June 12, 2002; however, 2005 Wis. Act 172, which amended §§ 102.17(4) and 102.66(1), suspended the 12–year statute of limitations for a certain category of traumatic injuries shifting the burden of payment back to the insurer. Concluding that the amendments applied retroactively to Liska's claim, but expressly declining to rule on the constitutionality of the amendments, the Department concluded that "Society Insurance has liability for [Liska's] claim and is ordered to make payment of . . . medical expenses associated with this injury."

¶ 9. Society petitioned the Labor and Industry Review Commission (Commission) for review of the Department's interlocutory order. On May 13, 2008, the Commission affirmed the findings and order of the Department. It expressly declined to decide the constitutionality of the retroactive application of Wis. Stat. §§ 102.17(4) and 102.66(1) noting that "the Commission . . . has no authority to address the constitutionality of statutes it enforces."

455

¶ 10. Society sought review of the Commission's decision in the circuit court. On September 29, 2008, the circuit court concluded that the legislature intended Wis. Stat. §§ 102.17(4) and 102.66(1), as amended effective April 1, 2006, to apply retroactively. The circuit court further concluded "that the retroactive application of [§§ ]102.17(4) and 102.66(1) as amended effective 4/01/06 is unconstitutional as being violative of the contract clause and due process rights of Society." Accordingly, the circuit court directed the Fund to reimburse Society for any treatment expense Society paid to Liska after April 1, 2006, and declared "that the Fund shall be responsible for Mr. Liska's . . . medical expenses regarding the June 25, 1982, injury from this point forward."

¶ 11. In so concluding, the circuit court made several findings of fact. First, in determining that the impairment of Society's contractual obligation was substantial, the circuit court calculated the treatment expenses Liska had submitted since the 12–year statute of limitations ran. It found that in 2004, "Liska submitted over $14,000 worth of expenses for payment" of which the Fund was ordered to pay approximately $3,300. The circuit court further found that Liska submitted additional expenses in 2007 in the amount of $2,189.80 or $8,159.09, depending on whether Liska's health insurer was to be reimbursed. The circuit court concluded that these were substantial expenses to impose on Society. Second, the circuit court found that "there isn't any way for [Society] to address premiums to pay for currently existing expenses for claims where the statute of limitations has already run."

456

¶ 12. The Fund appealed. The court of appeals certified the appeal, which we accepted pursuant to Wis. Stat. § 808.05(2).[6] We now affirm the decision of the circuit court.

## II. DISCUSSION

### A. Standard of Review

¶ 13. Whether the retroactive application of a statute is constitutional presents a question of law that we review de novo. *See Barbara B. v. Dorian H.,* 2005 WI 6, ¶ 8, 277 Wis. 2d 378, 690 N.W.2d 849 (citing *Neiman v. Am. Nat'l Prop. & Cas. Co.,* 2000 WI 83, ¶ 8, 236 Wis. 2d 411, 613 N.W.2d 160). Although " 'this court does defer to a certain extent' to the interpretation and application of the statute by the enforcing agency," we need not do so here because the enforcing agency expressly declined to rule on the constitutionality of the retroactive application of Wis. Stat. §§ 102.17(4) and 102.66(1), as amended. *Chappy v. LIRC,* 136 Wis. 2d 172, 180, 401 N.W.2d 568 (1987) (quoting *Pigeon v. DILHR,* 109 Wis. 2d 519, 525, 326 N.W.2d 752 (1982)). In determining whether §§ 102.17(4) and 102.66(1) are unconstitutional, we will uphold the circuit court's findings of historical fact unless they are clearly erroneous. *See id.* at 184.

---

[6] Wisconsin Stat. § 808.05(2) provides in relevant part: "The supreme court may take jurisdiction of an appeal or any other proceeding pending in the court of appeals if: . . . [i]t grants direct review upon certification from the court of appeals prior to the court of appeals hearing and deciding the matter . . . ."

## B. The Fund and 2005 Wis. Act 172

¶ 14. To determine whether Society's constitutional rights have been violated by the retroactive application of Wis. Stat. §§ 102.17(4) and 102.66(1), some background on the Fund, including the changes implemented by 2005 Wis. Act 172, is necessary.

¶ 15. The Fund, established under Wis. Stat. § 102.65, creates a source of supplemental worker's compensation benefits for certain cases in addition to the benefits the Worker's Compensation Act (the Act) requires an insurer "to pay to an employee who is injured or who dies in the course of his employment." *Teschendorf v. State Farm Ins. Co.*, 2006 WI 89, ¶ 34, 293 Wis. 2d 123, 717 N.W.2d 258. Additional monetary burdens are imposed on employers or insurers in certain circumstances "to pay dependent children of deceased employees and injured employees who would otherwise be undercompensated." *Id.*, ¶ 36.

¶ 16. We have concluded that the administration of the Fund is consistent with the overall purpose of the Act. *Id.*, ¶ 37.

> The fundamental purpose of the [Act] is to compensate injured employees. The [Act] ensures employees smaller but more certain recoveries than might be available in tort actions, while employers are freed from the risk of large and unpredictable damage awards. Accordingly, the [Act] balances the interests of employers and employees by ensuring a recovery sufficient to meet an employee's economic damages while keeping the expense of funding worker's compensation manageable for employers.

*Id.* (internal quotations and citations omitted).

¶ 17. "The Fund is financed by payments from employers or worker's compensation carriers." *Id.*,

458

¶ 35; *see* Wis. Stat. § 102.65 ("[M]oneys payable to the state treasury under ss. 102.35(1), 102.47, 102.49, 102.59, and 102.60, together with all accrued interest on those moneys, . . . shall constitute [the Fund]."). Employers and insurers are required to make payments upon the occurrence of certain specified events. Payments must be made into the Fund as follows: (1) a surcharge must be paid "of not less than $10 nor more than $100" for failing to keep records or make reports in accordance with the Act or for falsifying such records or reports, Wis. Stat. § 102.35(1); (2) "[i]n each case of injury resulting in death" $20,000 must be paid, Wis. Stat. § 102.49(5)(a); (3) "in each case of injury resulting in death leaving no person dependent for support," the amount of the entire death benefit must be paid, § 102.49(5)(b); (4) "in each case of injury resulting in death, leaving one or more persons partially dependent for support," the amount of the death benefit to a wholly dependent survivor less the death benefit to a partially dependent survivor must be paid, § 102.49(5)(c); (5) "[i]n the case of the loss or of the total impairment of a hand, arm, foot, leg, or eye," $20,000 must be paid, Wis. Stat. § 102.59(2); and (6) in the case of an injury sustained by a minor illegally employed, amounts equal to or double the amount recoverable by the injured employee, but not exceeding $7,500 or $15,000 depending on the violation, must be paid, *see* Wis. Stat. § 102.60(1m)(a)–(d).

¶ 18. The Fund distributes an additional death benefit to the minor children of an employee who dies as the result of an injury, *see* Wis. Stat. § 102.49(1), and makes payments for supplemental benefits or treatment expenses to claimants with certain meritorious claims that are barred solely by the 12–year statute of limitations, *see* Wis. Stat. § 102.66(1). 2005 Wis. Act 172

459

made changes to the class of meritorious claims barred by the statute of limitations that are eligible for payment distributed from the Fund.

¶ 19. An employee is barred from proceeding against an employer or insurer if an application for a hearing is not filed within 12 years from the date of injury, death or the last payment of compensation was paid or would have been paid if no advancement was made, whichever date is latest. *See* Wis. Stat. § 102.17(4) (2003–04); § 102.17(4) (2005–06). 2005 Wis. Act 172 did not affect this provision.

¶ 20. 2005 Wis. Act 172 amended both Wis. Stat. §§ 102.17(4) and 102.66(1). 2005 Wis. Act 172, §§ 15, 62. Prior to the passage of 2005 Wis. Act 172, § 102.17(4) (2003–04) provided that "[i]n the case of . . . a traumatic injury resulting in the loss or total impairment . . . of a foot or any part of the rest of the leg proximal to the foot, . . . there shall be no statute of limitations, except that benefits or treatment expense becoming due after" the 12–year statute of limitations has run "shall be paid from the [Fund]." Additionally, § 102.66(1) (2003–04) provided that "[i]n the event that there is an otherwise meritorious claim for . . . a traumatic injury resulting in the loss or total impairment . . . of a foot or any part of the rest of the leg proximal to the foot, . . . and the claim is barred solely by the statute of limitations under s. 102.17(4), the department may . . . direct payment from the [Fund]."

¶ 21. Wisconsin Stat. § 102.17(4), as amended, provides that "benefits or treatment expense for a traumatic injury becoming due after" the 12–year statute of limitations has run "shall be paid by the employer or insurer." Wisconsin Stat. § 102.66(1), as amended, removes traumatic injuries from the class of "otherwise meritorious claim[s]" "barred solely by the statute of

460

limitations under s. 102.17(4)" that are entitled supplemental benefits from the Fund. The amendments, enacted under 2005 Wis. Act 172, took effect April 1, 2006. *See* 2005 Wis. Act 172 ("Date of publication: March 31, 2006"); Wis. Stat. § 991.11 (Unless an effective date is expressly prescribed, "[e]very act . . . shall take effect on the day after its date of publication.").

¶ 22. Accordingly, Wis. Stat. §§ 102.17(4) and 102.66(1), as amended effective April 1, 2006, eliminated the 12–year statute of limitations for traumatic injuries and shifted the burden of payment of benefits or treatment expense becoming due after 12 years from the date of the injury, death or last payment of compensation, from the Fund to the employer or insurer. *See Wis. Legislative Council Act Memo* for 2005 Wis. Act 172, at ¶ 8 (June 9, 2006), *available at* http://www.legis.state.wi.us/2005/data/lc_act/act172–sb474.pdf.

### C. Constitutionality of Retroactive Legislation as Applied to Society

¶ 23. For purposes of this appeal, the parties concede that Wis. Stat. §§ 102.17(4) and 102.66(1), as amended effective April 1, 2006, apply retroactively to Liska's claim.

¶ 24. It is undisputed that under Wis. Stat. § 102.17(4) (2003–04) the statute of limitations ran on June 12, 2002, 12 years after Society made its last payment of compensation for temporary total disability benefits to Liska on June 12, 1990.[7] It is further

---

[7] The statute of limitations runs "12 years from the date of the injury or death or from the date that compensation . . . was last paid, or would have been last payable if no advancement were made, *whichever date is latest.*" Wis. Stat. § 102.17(4) (emphasis added). June 25, 1982, was the date of Liska's injury.

undisputed that prior to 2005 Wis. Act 172, Liska's benefits or treatment expense coming due after June 12, 2002, were payable from the Fund, *see* § 102.17(4) (2003–04) and Wis. Stat. § 102.66(1) (2003–04). However, pursuant to the retroactive application of §§ 102.17(4) and 102.66(1), as amended, Liska's benefits or treatment expense coming due after June 12, 2002, must be paid by Society.

¶ 25. Accordingly, Society and the Fund dispute only whether the retroactive application of Wis. Stat. §§ 102.17(4) and 102.66(1), as applied to Society, is unconstitutional. Society argues that the retroactive application of §§ 102.17(4) and 102.66(1), deprives it of a substantive property right without due process of law and substantially impairs its contractual obligation. We agree with Society and conclude that the retroactive application of §§ 102.17(4) and 102.66(1), as amended effective April 1, 2006, unconstitutionally deprives Society of property without due process of law and violates the contract clauses of the state and federal constitutions.

¶ 26. The legislature can pass a statute that has retroactive effect so long as it does not violate the

June 12, 1990, was the date Society made its last payment of compensation for temporary total disability benefits to Liska. In addition to paying temporary total disability benefits, Society also admitted liability for 337.5 weeks, or 6.49 years, of permanent partial disability benefits, which were paid in an advance lump sum on February 18, 1983. If no advancement had been made, Society would have made its last payment to Liska in August 1989. June 12, 1990, being the latest of the three dates, is used to calculate when the statute of limitations ran on Liska's claim. *See* § 102.17(4). As such, the statute of limitations ran on June 12, 2002, 12 years from June 12, 1990, the date that compensation was last paid.

federal or state constitution. As with all legislation, "[r]etroactive legislation is presumed constitutional." *Barbara B.*, 277 Wis. 2d 378, ¶ 17. "This presumption is based on our respect for a co-equal branch of government and is meant to promote due deference to legislative acts." *Dane Cnty. Dep't of Human Servs. v. P.P.*, ¶ 16, 279 Wis. 2d 169, 694 N.W.2d 344. Because a facial constitutional challenge attacks the law itself as drafted by the legislature, claiming the law is void from its beginning to the end and that it cannot be constitutionally enforced under any circumstances, the presumption of constitutionality is proper. *State v. Wood*, 2010 WI 17, ¶ 13, 323 Wis. 2d 321, 780 N.W.2d 63.

¶ 27. Society, however, mounts an as-applied challenge,[8] claiming that Wis. Stat. §§ 102.17(4) and 102.66(1) are unconstitutional as applied to Society. In an as-applied challenge, our task is to determine whether the statute has been enforced in an unconstitutional manner. While we presume a statute is constitutional, we do not presume that the State applies statutes in a constitutional manner. Because the legislature plays no part in enforcing our statutes, "deference to legislative acts" is not achieved by presuming that the statute has been constitutionally applied. *Dane Cnty.*, 279 Wis. 2d 169, ¶ 16. As such, neither the challenger nor the enforcer of the statute face a pre-

---

[8] That Society advanced an as-applied challenge here is evident from Society's briefs and oral argument. Moreover, even if Society had advanced both a facial challenge and an as-applied challenge, as the dissent asserts, dissent, ¶ 6 n.3, a "facial challenge should generally not be entertained when an 'as-applied' challenge could resolve the case." *Colo. Republican Fed. Campaign Comm. v. Fed. Election Comm'n*, 518 U.S. 604, 624 (1996) (citing *Renne v. Geary*, 501 U.S. 312, 323–24 (1991)).

sumption in an as-applied challenge.[9] The challenger, however, has the burden of proof, a concept distinct

[9] The dissent improperly presumes the statutes in this case were constitutionally applied. It states: "Society has fallen far short of meeting its burden of overcoming the presumption of constitutionality, much less proving it unconstitutional beyond a reasonable doubt." Dissent, ¶ 10. As we just explained, because Society is not mounting a facial challenge to Wis. Stat. §§ 102.17(4) and 102.66(1), it need not overcome the presumption of constitutionality. Instead, Society has the burden of proving, beyond a reasonable doubt, that the statutes were applied to it in an unconstitutional manner.

The dissent further confuses the distinction between facial and as-applied challenges in faulting Society for its failure to put forth evidence estimating "how many claims Society would face from claimants who would be in the same position as the claimant here" and "the magnitude of future liability imposed on Society." Dissent, ¶ 9. Because these facts are absent, the dissent asserts that Society has failed to meets its burden of proving the statutes unconstitutional beyond a reasonable doubt, and therefore, a remand for an evidentiary hearing is necessary. *Id.*, ¶ 10.

Because Society makes an as-applied challenge, not a facial challenge, "we assess the merits of the challenge by considering the facts of the particular case in front of us, 'not hypothetical facts in other situations'" and determine whether "the challenger [] show[ed] that his or her constitutional rights were actually violated." *State v. Wood*, 2010 WI 17, ¶ 13, 323 Wis. 2d 321, 780 N.W.2d 63 (quoting *State v. Hamdan*, 2003 WI 113, ¶ 43, 264 Wis. 2d 433, 665 N.W.2d 785). As such, evidence estimating the retroactive statutes' impact on other claims like Liska's that Society may face and the potential liability resulting from any such claims are facts outside "the particular case in front of us," *id.*, and therefore, are not relevant. The evidence presented by Society regarding the facts of this particular case is sufficient to demonstrate that Wis. Stat. §§ 102.17(4) and 102.66(1) as applied to Society are unconstitutional beyond a reasonable doubt.

from the presumption of constitutionality. Society, as the challenger, has the burden of proving the statute, as applied to it, is unconstitutional beyond a reasonable doubt. *See State v. Smith,* 2010 WI 16, ¶ 18, 323 Wis. 2d 377, 780 N.W.2d 90.

### 1. Due process

██ ██

¶ 28. The due process clauses of Article I, Section 1 of the Wisconsin Constitution[10] and the Fourteenth Amendment to the United States Constitution[11] protect individuals from being deprived of property without due process of law. *Barbara B.,* 277 Wis. 2d 378, ¶ 18. We have adopted a two-part test to determine whether retroactive statutes comport with due process. *See id.,* ¶¶ 19–20.

¶ 29. We first determine whether application of the statutes in question to the party challenging the statute actually has a retroactive effect. *Id.,* ¶ 20. This inquiry turns on whether the challenging party has a

---

[10] Article I, Section 1 of the Wisconsin Constitution provides: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed."

[11] The Fourteenth Amendment to the United States Constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

We have concluded that the due process clause in our state constitution is the "substantial equivalent" to its counterpart in the federal constitution. *Neiman v. Am. Nat'l Prop. & Cas. Co.,* 2000 WI 83, ¶ 8, 236 Wis. 2d 411, 613 N.W.2d 160.

"vested" right. *Id.* " 'The concept of vested rights is conclusory—a right is vested when it has been so far perfected that it cannot be taken away by statute.' " *Id.* (quoting *Neiman,* 236 Wis. 2d 411, ¶ 14) (further internal quotations and citation omitted).

■■■■

¶ 30. However, merely "identifying a substantive, or vested, property right is not dispositive for due process purposes." *Neiman,* 236 Wis. 2d 411, ¶ 14. After a vested property right has been identified, we employ the balancing test set forth in *Martin v. Richards,* 192 Wis. 2d 156, 531 N.W.2d 70 (1995), which "examines whether the retroactive statute has a rational basis." *Barbara B.,* 277 Wis. 2d 378, ¶ 19; *Neiman,* 236 Wis. 2d 411, ¶¶ 14–15. "Whether there exists a rational basis involves weighing the public interest served by retroactively applying the statute against the private interest that retroactive application of the statute would affect." *Matthies v. Positive Safety Mfg. Co.,* 2001 WI 82, ¶ 27, 244 Wis. 2d 720, 628 N.W.2d 842 (citing *Martin,* 192 Wis. 2d at 201). The retroactive legislation must have a " 'rational legislative purpose.' "[12] *Chappy,* 136 Wis. 2d at

---

[12] We note that *Neiman,* and other cases following *Neiman,* require a showing of a "substantial" or " 'significant and legitimate' " public purpose for retroactive legislation to survive a due process challenge. *Id.,* ¶ 23 (quoting *Chappy v. LIRC,* 136 Wis. 2d 172, 187, 401 N.W.2d 568 (1987)). Such a requirement is absent from our discussion because it is inconsistent with the rational basis test that applies to a due process challenge to retroactive legislation.

In a contract clause challenge, "[t]he degree of [contractual] impairment determines the level of scrutiny to which the legislation in question will be subjected." *State ex rel. Cannon v. Moran,* 111 Wis. 2d 544, 558, 331 N.W.2d 369 (1983). "[T]he requirement that there exist a significant and legitimate public

192 (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 730 (1984)). To survive a due process challenge, the "public purpose . . . [must] outweigh[] the private interests . . . overturn[ed]" by the challenged legislation. *Neiman,* 236 Wis. 2d 411, ¶ 23 (citing *Martin,* 192 Wis. 2d 156); *Matthies,* 244 Wis. 2d 720, ¶ 48

---

interest arises only where there exists a substantial impairment [of a contractual obligation]. If the impairment is less than substantial, a diminished degree of scrutiny is required." *Chappy,* 136 Wis. 2d at 188.

In contrast, we review a due process challenge to retroactive legislation under a rational basis review. *Neiman,* 236 Wis. 2d 411, ¶ 9. As such, "when a retroactive statute is challenged, the due process test [requires a] showing 'that the retroactive application of the legislation is itself justified by a rational legislative purpose.' " *Chappy,* 136 Wis. 2d at 192 (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 730 (1984)).

In *Neiman,* we were confronted with whether retroactive legislation violated due process. *Neiman,* 236 Wis. 2d 411, ¶ 1. In that case we relied on *Chappy*'s discussion of a public purpose that justifies a substantial impairment of contract in our discussion of the due process balancing test. We explained:

> The balancing test employed in *Chappy* included an examination of the public purpose behind the statute. We stated that the public purpose must be "significant and legitimate" and "directed towards remedying a broad and general social or economic problem." As in the *Chappy* analysis, the public purpose supporting retroactivity under a due process analysis must also be substantial, valid and intended to remedy a general economic or social issue.

*Id.,* ¶ 23 (quoting *Chappy,* 136 Wis. 2d at 187–88) (internal citations omitted).

We conclude that requiring a showing of a "significant and legitimate public purpose" in the course of a due process challenge improperly subjects the retroactive legislation to a heightened level of scrutiny. Retroactive legislation must be "justified by a rational legislative purpose." *Pension Benefit,* 467 U.S. at 730.

("conclud[ing] that any public interest served . . . is substantially outweighed by the impairment of Matthies' right to recover"); *Martin,* 192 Wis. 2d at 211 ("conclud[ing] that the private interest outweighs the minimal public interest served by the retroactive application of the cap.").

¶ 31. In *Neiman,* we were asked to determine whether the retroactive application of a statutory increase in recovery for the loss of society and companionship for wrongful death of a minor violated due process. *Neiman,* 236 Wis. 2d 411, ¶ 1. At the time of the accident that caused Neiman's child to be stillborn, a statute limited damages for the loss of society and companionship of a minor child in a wrongful death action to $150,000. *Id.,* ¶ 1 & n.1. Subsequently, the legislature increased the damages limit by statute to $500,000. *Id.,* ¶ 1 & n.2. Because Wisconsin law provides that the amount of recovery, when set by statute, "is fixed on the date of injury," *id.,* ¶ 13 (citing *Martin,* 192 Wis. 2d at 206–07), we concluded that the insurer, American National Property and Casualty Company (American National), had "a right to a fixed exposure to liability that accrued on the date of the injury which would be adversely affected by retroactive application" of the change in statutory damage limits. *Matthies,* 244 Wis. 2d 720, ¶ 20 (discussing *Neiman*). Accordingly, the retroactive increase in damages available "affect[ed] a substantive right," in regard to the amount of the payment, which vested on the date of the injury. *Neiman,* 236 Wis. 2d 411, ¶ 13.

¶ 32. In applying the balancing test, we concluded that the retroactive legislation "unfairly overturn[ed] settled expectations." *Id.,* ¶ 22. Specifically, we explained that American National had a private interest in having "its liability fixed on the date of injury," and on

the date of injury, the insurer's exposure to liability for damages was not to exceed $150,000. *Id.*, ¶ 20. Because American National's liability for damages increased to $500,000, the retroactive legislation "unsettled" American National's private interest in fixed liability. *Id.*

¶ 33. We further looked to whether the retroactive legislation swept away American National's settled expectations " 'suddenly and without individualized consideration.' " *Id.*, ¶ 21 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994)). Insurers, such as American National, "reasonably rely upon the law as set forth by the courts and the legislature." *Id.* Accordingly, the retroactive legislation "deprived [American National], as well as other defendants in tort actions, of a meaningful notice of the potential increase in exposure to claims or an opportunity to increase premiums to pay the expense of this increased exposure." *Id.*

¶ 34. We then turned to the second prong of the balancing test to determine "whether the public purpose for this retroactive application of the statute outweighs the private interests it overturns." *Id.*, ¶ 23. We considered all of the public purposes identified by Neiman, the legislative history and the general context of wrongful death claims and concluded that while "the public interests identified would arguably support prospective application of an increase in damages . . ., these reasons provide[d] weak support for retroactive increases in damages." *Id.*, ¶¶ 24–30. Because the public interests served did not outweigh the private interests overturned by retroactive application, we concluded "that the retroactive application of the statute violate[d] due process." *Id.*, ¶ 31.

¶ 35. More recently, in *Matthies,* we were confronted with whether retroactive legislation "amending the statute on contributory negligence, Wis. Stat.

469

§ 895.045, to limit joint and several liability to a person found 51% or more causally negligent[,]" as applied to Matthies' negligence claim, violated due process. *Matthies,* 244 Wis. 2d 720, ¶ 1. Matthies' hand was injured by a punch press. At the time of Matthies' injury, "joint and several liability was a common-law rule in Wisconsin which permitted a plaintiff to recover his or her damages from any one of two or more persons whose joint or concurring negligent acts caused the plaintiff's injury." *Id.* After Matthies' accident, but before he filed his negligence claim, the legislature amended § 895.045.

¶ 36. In identifying the public interest served by retroactive application of Wis. Stat. § 895.045, we first noted that "there [was] nothing in the Legislative Reference Bureau's legislative drafting file which indicate[d] that the legislature amended Wis. Stat. § 895.045 in response to a pressing, or otherwise, economic or social issue." *Id.,* ¶ 32. Accordingly, we explained that "to determine, based on the legislative history available, what motivated the legislature to modify the doctrine, requires speculation." *Id.* As a result, we considered Positive Safety's contentions regarding the public interest served by retroactive application of the statute. We rejected each of Positive Safety's contentions, concluding that they did not establish a public interest and that the record was devoid of any evidence in support of its contentions. *Id.,* ¶¶ 33–36.

¶ 37. In contrast, we concluded that "retroactive application of Wis. Stat. § 895.045(1) would severely impair Matthies' right to recover all of his damages . . . without any real notice." *Id.,* ¶ 46. At the time he was injured, Matthies was entitled to a full recovery of his damages from any defendant found causally negligent. The amended statute had the potential to reduce Matthies' damages by 50 percent, possibly more. *Id.,*

¶¶ 46–47. In balancing the respective interests, we concluded that "the substantial impairment of Matthies' right to recovery significantly outweigh[ed] the public interest, if any, served by retroactive application of § 895.045(1)." *Id.*, ¶ 47. "Accordingly, retroactive application of § 895.045(1)'s modification of joint and several liability [was] an unconstitutional violation of due process." *Id.*

¶ 38. Finally, our decisions establish the significance of an insurer's inability to recover from its insured, through increased premiums, losses resulting from retroactive legislation. *See Chappy,* 136 Wis. 2d at 193–94; *State ex rel. Briggs & Stratton v. Noll,* 100 Wis. 2d 650, 657–58, 302 N.W.2d 487 (1981). In *Chappy,* we concluded that the retroactive application of Wis. Stat. § 102.43(7)(b), which increased the worker's compensation benefits of employees suffering a renewed period of temporary total disability, did not violate due process. *Chappy,* 136 Wis. 2d at 174–75. In *Chappy,* we distinguished *Noll,* a case in which we concluded that the retroactive application of an increase in maximum worker's compensation benefits violated due process. *Noll,* 100 Wis. 2d at 658. We explained:

> In *Noll* we held that the challenged statute was unconstitutional because it retroactively affected the employer's obligation which already had been set by law. Our conclusion was based upon the fact that there was no opportunity for the insurer, through increased premiums, to recover for statutorily imposed increased disability payments growing out of past events.

*Chappy,* 136 Wis. 2d at 194 (internal citation omitted). By contrast, the challenged statute in *Chappy* "create[d] new obligations with respect to past transactions, only upon the occurrence of a new, prospective event." *Id.* Because the triggering event was prospective, nothing

471

prevented an insurer from seeking a rate increase based on the actuarial probability that a future claim, based on a past injury, would arise. *Id.*

¶ 39. We apply this background of constitutional principles to the challenged legislation. We " 'view[] statutes of limitations as substantive statutes[, which] create and destroy rights.' " *State v. Haines,* 2003 WI 39, ¶ 12, 261 Wis. 2d 139, 661 N.W.2d 72 (quoting *Betthauser v. Med. Protective Co.,* 172 Wis. 2d 141, 149, 493 N.W.2d 40 (1992)). " '[T]he right which is subject to constitutional protection is that which vests *at the time the statute runs, not before.*' " *Id.,* ¶ 13 (quoting *Ortman v. Jensen & Johnson, Inc.,* 66 Wis. 2d 508, 522, 225 N.W.2d 635 (1975)). As such, " 'once a statute of limitations has run, the party relying on the statute has a vested property right in the statute-of-limitations defense, and new law which changes the period of limitations cannot be applied retroactively to extinguish that right.' " *Id.,* ¶ 13 (quoting *Borello v. U.S. Oil Co.,* 130 Wis. 2d 397, 416, 388 N.W.2d 140 (1986)). Conversely, " 'where a new extended period of limitations [is] provided by statute in the interim between the accrual of the cause of action and the running of the original period of limitations, the new period would apply.' " *Id.* (quoting *Borello,* 130 Wis. 2d at 416). In the latter instance, because the statute of limitations has not run, the right to a statute of limitations defense has not yet vested and, therefore, is not subject to the same constitutional protection.

¶ 40. Wisconsin Stat. § 102.17(4) (2003–04) imposed a 12–year statute of limitations on traumatic injury claims. § 102.17(4) (2003–04) ("The right of an employee . . . to proceed under this section shall not extend beyond 12 years from the date of the injury or

472

death or from the date that compensation . . . was last paid."). It is undisputed that the 12–year statute of limitations ran on Liska's claim on June 12, 2002, prior to the passage of 2005 Wis. Act 172. *See supra* ¶ 24 & note 7. Accordingly, applying the rule set forth in *Haines,* Society has a substantive property right in its statute of limitations defense, which vested on June 12, 2002, when the statute of limitations ran.

¶ 41. However, we recognize that Wis. Stat. § 102.17(4)'s statute of limitations operates differently than the typical statute of limitations in that it does not bar a claimant from initiating a claim for relief, *see Wenke v. Gehl Co.,* 2004 WI 103, ¶ 50, 274 Wis. 2d 220, 682 N.W.2d 405 (explaining that a statute of limitations establishes a timeframe within which a claim must be initiated); instead, it limits the liability of the employer or insurer such that they are required to pay an employee's benefits or treatment expenses for a fixed period before the Fund takes over, § 102.17(4) (2003–04).

¶ 42. Whether Wis. Stat. § 102.17(4) (2003–04) operates as a traditional statute of limitations does not alter the fact that Society has a substantive, vested property right because Society's statute of limitations defense translates into a vested right of fixed exposure to liability. Following *Neiman,* we conclude that Society has a vested right in limiting its liability to pay Liska's benefits or treatment expense once 12 years from the date of the last payment of compensation had passed. *See Neiman,* 236 Wis. 2d 411, ¶ 13. Let us explain more fully.

¶ 43. Wisconsin Stat. § 102.17(4) (2003–04) imposed liability on Society for Liska's benefits or treatment expense, and the statute of limitations established that such liability expired 12 years from the date of its last payment of compensation to Liska. On June 12,

473

2002, 12 years from the last payment of compensation, the statute of limitations ran, and Society's liability to Liska expired. *See* § 102.17(4) (2003–04). It was on that same date that Society's right to 12 years fixed liability vested. This is so because on June 12, 2002, the running of the statute of limitations gave Society a complete defense to further liability on Liska's claim. *See Haines*, 261 Wis. 2d 139, ¶ 13. Wisconsin Stat. §§ 102.17(4) and 102.66(1), which were enacted after Society's right to fixed liability vested, renewed Society's liability for Liska's benefits or treatment expense until Liska's death. Accordingly, the retroactive legislation affected Society's substantive, vested "right to a fixed exposure to liability" that accrued on the date the statute of limitations ran. *See Matthies*, 244 Wis. 2d 720, ¶ 20 (discussing *Neiman*).

¶ 44. Because we have concluded that the retroactive application of Wis. Stat. §§ 102.17(4) and 102.66(1) " 'retroactively affects a substantive right that accrued before the passage of the legislation,' " "we proceed [to] the *Martin* balancing test." *Barbara B.*, 277 Wis. 2d 378, ¶ 20 (quoting *Matthies*, 244 Wis. 2d 720, ¶ 27). First, we consider the private interests overturned by this retroactive legislation, including any unfairness inherent in its application.

¶ 45. As we explained above, Society has a right to fixed exposure to liability, which vested on June 12, 2002, the date the statute of limitations ran. At the time of Liska's injury, Society was responsible for all benefits or treatment expense for 12 years from the date of the last payment of compensation. *See* Wis. Stat. § 102.17(4) (2003–04). Society's right to fixed liability is unsettled by the retroactive application of § 102.17(4) and Wis. Stat. § 102.66(1) because the statutes renewed Society's liability for Liska's benefits or treatment expense until Liska's death.

¶ 46. While Society's total liability for Liska's future benefits or treatment expense is unknown, its potential liability is significant. This can reasonably be inferred from the treatment expense previously incurred. Since the statute of limitations ran in 2002, Liska submitted expenses for payment of which the Fund was ordered to pay approximately $3,300. In 2007, Liska submitted expenses in the amount of $2,189.80, or $8,159.09 if Liska's health insurer was to be reimbursed. Because Liska's injury will require ongoing medical treatment and because Society's liability is limited only by Liska's death, it is reasonable to assume that Society will be responsible for paying thousands of dollars of treatment expenses in the future. The above-listed expenses, incurred by a single insured over the course of a few years, are not de minimis and have the potential to be substantial.

¶ 47. Society's right to fixed liability was unsettled " 'suddenly and without individualized consideration.' " *Neiman,* 236 Wis. 2d 411, ¶ 21 (quoting *Landgraf,* 511 U.S. at 266)). Insurers, such as Society, "reasonably rely upon the law as set forth by the courts." *Id.* Additionally, Society had no notice of the change in its liability prior to the passage of 2005 Wis. Act 172, which went into effect the day after its date of publication. Accordingly, retroactive application of 2005 Wis. Act 172 deprived Society of any meaningful notice of the potential increase in exposure to claims.

¶ 48. The retroactive application of Wis. Stat. §§ 102.17(4) and 102.66(1) not only exposes Society to liability for Liska's claim after the statute of limitations ran, but also prevents Society from any opportunity to recover, through an increase in Meyer's premiums, the expense of Society's increased exposure on Liska's claim. The circuit court made a finding that Society had no way

to recoup the expenses resulting from Liska's claim through premiums. The Fund has not demonstrated that such a finding is clearly erroneous. Moreover, because Society's increased liability arises out of a past event—Liska's injury—and not a prospective event, *Noll* supports the circuit court's finding that Society had no opportunity to recoup expenses through increased premiums. *See Chappy,* 136 Wis. 2d at 194 (discussing *Noll*).

¶ 49. We now turn to the other side of the *Martin* balancing test and consider the public interest served by retroactive application of Wis. Stat. §§ 102.17(4) and 102.66(1).

¶ 50. We note, as in *Matthies,* that there is nothing in the Legislative Reference Bureau's legislative drafting file that demonstrates a rational legislative purpose justifying retroactive application of Wis. Stat. §§ 102.17(4) and 102.66(1). *See Matthies,* 244 Wis. 2d 720, ¶ 32. As such, "to determine . . . what motivated the legislature to modify the doctrine, requires speculation." *Id.*

¶ 51. The Fund contends that the legislature amended Wis. Stat. §§ 102.17(4) and 102.66(1) "for the purpose of maintaining the solvency of [the Fund]." There is nothing in the drafting file or anywhere else in the record that suggests that the Fund was insolvent or that retroactive application of §§ 102.17(4) and 102.66(1) would affect the solvency of the Fund.

¶ 52. Contrary to our holding in *Chappy,* the public purpose identified here is at odds with the purpose of the Act. *Chappy,* 136 Wis. 2d at 193 (explaining that the public purpose of the retroactive legislation was "consistent with the basic purpose of worker's compensation"). The fundamental purpose of the Act is to compensate

injured employees through smaller, but more certain recoveries than might be available in tort actions, while employers or insurers are freed from the risk of large and unpredictable damage awards. *Teschendorf,* 293 Wis. 2d 123, ¶ 37. Because the retroactive legislation makes Society responsible for Liska's benefits or treatment expense without limit until Liska's death after the statute of limitations had run on such claim, the retroactive legislation subjects Society to potentially significant and unpredictable damage awards. Therefore, the retroactive legislation undermines the Act's goal of keeping the expense of funding worker's compensation predictable and manageable. *See id.*

¶ 53. Now that the respective interests have been identified, we must balance them to determine whether the public interest served by the retroactive legislation outweighs the private interest at stake. In so doing, we conclude that Society has met its burden of establishing beyond a reasonable doubt that retroactive application of Wis. Stat. §§ 102.17(4) and 102.66(1), as amended, violated its right to due process. Balancing the public's interest against Society's private interest, we weigh Society's private interest as more substantial.

¶ 54. Shifting the burden of traumatic injury benefits or treatment expense to self-insured employers or insurers in order to maintain the solvency of the Fund, as Society contends, provides weak support for retroactive application of Wis. Stat. §§ 102.17(4) and 102.66(1).[13] We reiterate that the record is devoid of any

---

[13] Despite our conclusion that maintaining the solvency of the Fund is an insufficient public purpose to justify retroactive application of Wis. Stat. §§ 102.17(4) and 102.66(1), the same public purpose may justify prospective application of the statutes. *See Martin v. Richards,* 192 Wis. 2d 156, 201, 531 N.W.2d 70 (1995) ("'The [retroactive] aspects of legislation, as well as

evidence demonstrating that the legislature intended §§ 102.17(4) and 102.66(1) to apply retroactively to maintain the solvency of the Fund. However, assuming that requiring insurers to pay for time-barred traumatic injury claims maintains the solvency of the Fund, we think this weighs in Society's favor because it demonstrates the significant financial burden being shifted to insurers. This is so because in order to impact the solvency of the Fund, time-barred traumatic injury claims must necessarily involve payment of significant benefits or treatment expense.

¶ 55. The evidence in the record supports our conclusion that the challenged legislation will expose Society to potentially significant losses. For the years 2004 through 2007, Liska submitted medical expenses totaling either $5,512.23 or $11,481.52, depending on whether Liska's health insurer is to be reimbursed. We view this as significant. Also, weighing in Society's favor is the unfairness resulting from its inability to recoup its losses through increased premiums. *See supra* ¶ 48.

## 2. Contract clause

¶ 56. Retroactive legislation may not unconstitutionally impair the obligation of contract in violation of Article I, Section 10 of the United States Constitution[14]

---

the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former.' ") (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 17 (1976)). We, however, do not decide the constitutionality of the prospective application of §§ 102.17(4) and 102.66(1).

[14] Article I, Section 10 of the United States Constitution provides:

No state shall enter into any treaty, alliance, or confederation; grant letters of marque and reprisal; coin money; emit bills of

or Article I, Section 12 of the Wisconsin Constitution.[15] We are bound by the United States Supreme Court's interpretation of the United States Constitution's contract clause. *Chappy,* 136 Wis. 2d at 186. Additionally, we generally interpret the state and federal contracts clauses coextensively, although we are not bound to do so. *Id.*

¶ 57. The constitutional proscription against impairment of the obligation of contract is not absolute. *Id.* Instead, the prohibition of the contract clause must accommodate the police power of the state to pass law that promotes the common wealth or is necessary for the general good of the public, though contracts previously entered into may thereby be affected. *Id.* at 186–87. As such, we have developed a multi-part test to analyze whether retroactive legislation impairs a contractual obligation such that it rises to the level of a constitutional violation.

■■■

¶ 58. The first step is to determine how severely the contractual relationship has been impaired by the challenged legislation. *Id.* at 187–88. This determination measures the level of scrutiny to which the legislation is subjected. *Id.* at 187 (citing *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.,* 459 U.S. 400, 411 (1983)). "If the legislation constitutes a substantial

---

credit; make any thing but gold and silver coin a tender in payment of debts; pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or grant any title of nobility.

[15] Article I, Section 12 of the Wisconsin Constitution provides: "No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed, and no conviction shall work corruption of blood or forfeiture of estate."

impairment, there must exist a significant and legitimate public purpose behind the legislation." *Id.* (citing *Energy Reserves,* 459 U.S. at 411). "If the impairment is less than substantial, a diminished degree of scrutiny is required." *Id.* at 188. If there is no impairment or only minimal impairment, we end the inquiry. *Wis. Prof'l Police Ass'n v. Lightbourn,* 2001 WI 59, ¶ 147, 243 Wis. 2d 512, 627 N.W.2d 807. Under any degree of scrutiny, the public purpose ought to be "directed towards remedying a broad and general social or economic problem." *Chappy,* 136 Wis. 2d at 188. Accordingly, the greater the severity of the impairment, the higher the hurdle the legislation must clear. *Id.* at 187.

¶ 59. To determine the extent of the impairment, we " 'look to the reasonableness of the parties' reliance upon the contract affected." *Id.* It is important that we consider "whether the industry affected has been regulated in the past, whether the legislation nullified a basic term of the contract, and the potential liability imposed as a result of the challenged legislation." *Id.* (citing *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 242–47 (1978)).

¶ 60. Finally, once we have identified a significant and legitimate public purpose, the inquiry is whether the challenged legislation "is based 'upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption.' " *Id.* at 188 (quoting *Allied,* 438 U.S. at 244) (brackets omitted).

¶ 61. In *Cannon,* retroactive legislation operated to reduce the salaries of certain Milwaukee County circuit court judges by the amount of pension benefits they received from the Milwaukee County Employees'

480

Retirement System. *State ex rel. Cannon v. Moran,* 111 Wis. 2d 544, 545, 331 N.W.2d 369 (1983). We declared the retroactive legislation unconstitutional because it substantially impaired a contractual obligation.

¶ 62. We first noted that "legislation which alters the contractual expectations of the parties impairs the obligation of contract." *Id.* at 555 (citing *Allied,* 438 U.S. at 245–46); *see also Lightbourn,* 243 Wis. 2d 512, ¶ 155. Accordingly, because the challenged legislation operated to reduce the circuit court judges' salaries by the amount of pension benefits they received, the legislation impaired the circuit court judges' obligations under their benefit contracts. *Cannon,* 111 Wis. 2d at 557.

¶ 63. We then turned to whether the contractual impairment was substantial. We noted that in *Allied,* the Supreme Court concluded that a retroactive statute created a substantial impairment because "the legislation . . . nullified an express term of the contract which was bargained for and reasonably relied upon by the parties, resulting in a completely unexpected liability." *Id.* at 558.

¶ 64. Relying on the standard in *Allied,* we concluded that the contractual impairment was substantial. *Id.* The plaintiffs' contracts "expressly entitled them to a certain amount of pension benefits," which was "nullified" by the challenged legislation. *Id.* Furthermore, because the plaintiffs "reasonably relied upon the contract terms," the challenged legislation created a "completely unexpected and substantial loss." *Id.* at 558–59.

¶ 65. Applying the test set out above, we conclude that Society has met its burden of establishing beyond a reasonable doubt that retroactive application of Wis. Stat. §§ 102.17(4) and 102.66(1), as amended, unconstitutionally impairs Society's rights of contract.

¶ 66. First, we determine whether Wis. Stat. §§ 102.17(4) and 102.66(1) impair Society's contractual obligations. *See Chappy,* 136 Wis. 2d at 187. We conclude that they do. In exchange for a set premium, Society contracted to provide Meyer with worker's compensation insurance for its injured employees. Society negotiated its underwriting, pricing and premiums based upon the Act as it then-existed, including the then-existing 12–year statute of limitations applicable to traumatic injury claims. Retroactive application of §§ 102.17(4) and 102.66(1) "alter[ed] the contractual expectations of" Society by renewing its liability on Liska's claim after its original liability expired on June 12, 2002, the date the statute of limitations ran. *See Cannon,* 111 Wis. 2d at 555. As such, the legislation impaired the obligation of contract.

¶ 67. Applying the factors set out in *Chappy* and following our analysis in *Cannon,* we further conclude that the impairment of Society's contractual obligation was substantial. The legislation here modified a basic term of an insurance contract—the extent of an insurer's liability for traumatic injury claims—which was bargained for and reasonably relied upon by the parties. This "result[ed] in a completely unexpected liability" to Society after its original period of liability had expired, namely, new liability on Liska's claim until his death. *See id.* at 558. Furthermore, this completely unexpected liability exposes Society to potentially significant losses. The record reflects that since the statute of limitations ran, Liska submitted medical expenses totaling either $5,512.23 or $11,481.52, depending on whether Liska's insurer is reimbursed. Either figure is a significant expense. Finally, because Society is liable for all benefits or treatment expense for

a serious and permanent injury until Liska's death, the "potential liability" is significant. *See Chappy,* 136 Wis. 2d at 187.

¶ 68. Because we conclude that the legislation constitutes a substantial impairment of Society's contract rights, the challenged legislation is subject to heightened scrutiny. As such, there must exist a significant and legitimate public purpose behind the legislation. *Id.* at 187–88. In declaring the retroactive application of Wis. Stat. §§ 102.17(4) and 102.66(1) unconstitutional for violating due process, we concluded that the retroactive legislation was not justified by a rational legislative purpose under a diminished degree of scrutiny. *See id.* at 192 (quoting *Pension Benefit,* 467 U.S. at 730) ("[W]hen a retroactive statute is challenged, the due process test is met by showing 'that the retroactive application of the legislation is itself justified by a rational legislative purpose.' "). Because the retroactive legislation is not justified by a rational legislative purpose, we must necessarily conclude that it is not justified by a significant and legitimate public purpose. Accordingly, it is unnecessary to proceed any further in our analysis and we conclude that the retroactive application of §§ 102.17(4) and 102.66(1) to Society violates the contract clause. *See Lightbourn,* 243 Wis. 2d 512, ¶ 150 (ending its contract clause analysis because "WPPA [was] unable to complete the first step in an impairment analysis").

## IV. CONCLUSION

¶ 69. We conclude that the retroactive application of Wis. Stat. §§ 102.17(4) and 102.66(1), as amended effective April 1, 2006, is unconstitutional as applied to Society for two reasons: (1) it violates Society's due process rights guaranteed by the Fourteenth Amend-

ment to the United States Constitution and Article I, Section 1 of the Wisconsin Constitution; and (2) it substantially impairs Society's contractual obligation in violation of Article I, Section 10 of the United States Constitution and Article I, Section 12 of the Wisconsin Constitution.

*By the Court.*—Order affirmed.

¶ 70. N. PATRICK CROOKS, J. (*dissenting*). The United States Supreme Court has observed that "[w]here the burden of proof lies on a given issue is, of course, rarely without consequence and frequently may be dispositive to the outcome of the litigation[.]"[1] In the course of this litigation, both parties, Society Insurance Co. (Society) and the Work Injury Supplemental Benefit Fund (the Fund), have acknowledged that the record was missing facts necessary to perform the *Martin* balancing test and answer the question of whether Wis. Stat. §§ 102.17(4) and 102.66(1) can constitutionally be retroactively applied. Under such circumstances, the legal framework prescribed for constitutional analysis —that statutes are presumed constitutional, and that the challenging party bears the burden of proving otherwise beyond a reasonable doubt—usually referenced in passing at the outset of a case, instead becomes the whole ballgame.

¶ 71. In *Chappy v. LIRC,* in the context of a similar challenge to the constitutionality of the retroactive application of a statute, we set forth the presumption and burden governing this challenge:

Having determined that [the statute in question] applies retroactively, we now turn to the question of whether its retroactive operation renders [it] unconsti-

[1] *Lavine v. Milne,* 424 U.S. 577, 585 (1976).

484

tutional. In determining whether [the statute] is constitutional, the lower courts' findings of evidentiary or historical facts will be upheld unless they are clearly erroneous. However, the lower courts' holdings that [the statute] is constitutional is a question of law, and thus we do not give deference to the lower courts' decisions.

Furthermore, in reviewing the constitutionality of [the statute], we recognize there is a strong presumption that a legislative enactment is constitutional. This court has often explained that the party challenging the statute carries a heavy burden of persuasion. It is not sufficient that the challenger show that there is doubt as to the act's constitutionality. The challenger of a statute must prove beyond a reasonable doubt that the act is unconstitutional.

*Chappy v. LIRC,* 136 Wis. 2d 172, 184–85, 401 N.W.2d 568 (1987) (citations omitted).

¶ 72. Society acknowledges its burden under *Chappy.* At page 8 of its brief, Society makes reference to the Fund's brief's citation of *Chappy:* "The next section of [the Fund's] brief discusses the constitutional issue, citing the general principle that legislation enjoys a strong presumption of constitutionality. This appears to be an explanation of the burden of proof. This burden of proof is not disputed." The majority acknowledges that in its challenge, Society has the burden of proving the statute unconstitutional beyond a reasonable doubt. Majority op., ¶ 27. It is clear from the lack of evidence submitted that Society has not even come close to proving the statute unconstitutional beyond a reasonable doubt.

¶ 73. When we apply the *Martin* test to determine whether a retroactive statute comports with due process, we "weigh the public interest served by the retroactive statute against the private interests that are

overturned by it."[2] In a concise and well-reasoned brief to the circuit court, Society pointed out that "the balancing test that the court must use in its constitutional determination is dependent on facts relating to the public interests served and the private interests overturned by retroactive application." Society went on to note that the necessary evidence had not been presented and that the lack of facts cut both ways: "The defendants clearly struggle with the same issue as the plaintiffs: no hearing has been held, and no evidence has been presented. Therefore there is no evidence for the court to weigh on either side of the balancing test." Indeed, the Fund acknowledged in its brief to the circuit court that "applying these rules in this case is made difficult because there was no hearing and only an abbreviated record[.]"

¶ 74. Society's brief proceeded to offer a withering critique of the Fund's attempt to "overcome the lack of evidence by suggesting possible outcomes that might come about if evidence *were* presented." Society went on to quote this court's observation in *Chappy* that "[a]bsent any showing or indication of the costs involved for potential, similar claims, it would be pure speculation for this court to hold that Bituminous's contract rights were substantially impaired." Society then accurately identified both the problem and the solution:

> The plaintiffs agree with the defendants and the Chappy court that evidence should be presented. The plaintiffs' "failure" to present evidence, and indeed, the defendants' failure to present evidence is only due to the lack of a forum in which to bring forth any evidence. The only way to accomplish this properly is to remand the case back to the LIRC, and then the ALJ.

---

[2] *Martin v. Richards,* 192 Wis. 2d 156, 201 531 N.W.2d 70 (1995).

¶ 75. The question before us concerns a facial challenge to a statute's retroactive application on grounds that it is not constitutionally permissible.[3] We are equipped for the task with well-established prece-

[3] The majority attempts to relieve Society of its burden by characterizing the challenge as an as-applied, rather than facial, challenge to the retroactivity of the statutes. *See* majority op., ¶ 27. First, this characterization is not supported by the arguments made by Society in its brief. Society certainly never characterizes its challenge as as-applied challenge, and it gives every indication on virtually every page of its 19–page brief that the challenge is a facial one, starting with its statement on page 2 that "[g]iven the potential for significant financial liability to insurance companies and employers for a lengthy period of time, this case is clearly one of substantial and continuing public interest[.]" Its arguments invariably refer to the retroactive statutes' effects on insurance companies in general (e.g., its references to "the extreme cost for self-insured employers and insurance companies" (in Society's brief at page 10); its arguments that "raising premiums is not a realistic option for insurers" (page 9) and that the claim here "clearly illustrates the far-reaching and costly effect on self-insured employers and self-insured carriers" (page 11); its argument that "[t]he contractual rights of Society, and the great number of other insurers similarly situated, are substantially impaired by the retroactive liability placed on them[]" (page 13); its statement urging that "the contract rights of Society and similar insurers must not be impaired[]" (page 14); its assertion that "[t]he statute of limitations has long since run on each and every insurer and self-insured employer affected by the retroactive legislation[]" (page 17); and its reference to "insurers and self-insured employers being liable retroactively such that their contracts and vested rights are being impaired[]" (page 18)).

And second, frankly, as far as the presumption of a statute's constitutionality is concerned, it makes no difference what kind of challenge is being mounted. In *State v. Smith,* 2010 WI 16, concerning a challenge specifically denominated an as-applied challenge to a statute's constitutionality, Justice Ziegler wrote,

dent that governs our inquiry. Our case law gives statutes a presumption of constitutionality and stresses that a party challenging the statute's constitutionality has the heavy burden of proving the statute unconstitutional beyond a reasonable doubt.[4] We have a well-established balancing test to apply to make our determination. All that remains is to apply the *Martin* test, balancing the relevant public interest against the relevant private interests, using the facts of record.

¶ 76. Unfortunately, no evidence has been presented and therefore the court has no way to apply the required test. As is clear from the submissions of the parties themselves, this is not news to anyone. The scarcity of facts, obvious from the time the constitutional challenge was first raised,[5] remains fatal to any attempt by a court to perform the necessary analysis.

"A statute enjoys a presumption of constitutionality. To overcome that presumption, a party challenging a statute's constitutionality bears a heavy burden. It is insufficient for the party challenging the statute to merely establish either that the statute's constitutionality is doubtful or that the statute is probably unconstitutional. Instead, the party challenging a statute's constitutionality must prove that the statute is unconstitutional beyond a reasonable doubt. In this case, Smith claims that Wis. Stat. § 301.45 . . . is unconstitutional as applied to him. Therefore, Smith must prove that as applied to him, § 301.45 is unconstitutional beyond a reasonable doubt."

*State v. Smith,* 2010 WI 16, ¶¶ 8–9, 323 Wis. 2d 377, 780 N.W.2d 90(internal quotations and citations omitted). As noted above, *see* ¶ 3, Society disputes neither the statute's strong presumption of constitutionality nor its burden of proof.

[4] Majority op., ¶ 26, citing *Barbara B. v. Dorian H.,* 2005 WI 6, ¶ 17, 277 WIs. 2d 378, 690 N.W.2d 849 ("Retroactive legislation is presumed constitutional. It is the challenger's burden to overcome that presumption, by demonstrating the statute's unconstitutionality beyond a reasonable doubt.").

[5] The decision of the Labor and Industry Review Commission (the Commission) had been appealed to the circuit court;

¶ 77. Given a record that both parties acknowledge is inadequate, one would expect that the presumption of constitutionality and the question of who bears the burden to prove the statute unconstitutional beyond a reasonable doubt would be especially relevant. Unfortunately, though both are acknowledged, neither is given effect. The majority instead holds the wrong party accountable for the failure to provide the facts necessary to the balancing test.[6] The party penalized for "a record devoid of evidence"[7] is not the one that has the burden of proving a presumed constitutional statute unconstitutional beyond a reasonable doubt.

¶ 78. Furthermore, the evidence cited by the majority in support of Society is thin. It does not consist of any estimate of how many claims Society would face from claimants who would be in the same position as the claimant here (i.e., a claimant for whom the statute of limitations on claims ran prior to the effective date of the amended legislation, April 1, 2006[8]). Nor does it consist

neither the administrative law judge from the Department of Workforce Development Worker's Compensation Division who initially heard the case nor the Commission had addressed the constitutionality of the statute. *See* majority op., ¶ 9. As the Commission noted in its memorandum opinion affirming the ALJ's order, "[t]he commission, like most agencies, has no authority to address the constitutionality of the statutes it enforces. *McManus v. DOR,* 155 Wis. 2d 450, 454 (Ct. App. 1990). The commission interprets the statutes as written and does not address constitutional issues." After the circuit court's decision was appealed to the court of appeals, the court of appeals certified the questions to this court, which accepted the certification.

 [6] *See* majority op., ¶¶ 50, 53.

 [7] *Id.,* ¶ 54.

 [8] *See* majority op., ¶ 39 (comparing constitutional considerations in cases where the statute of limitations has run with those in cases where it has not).

of any estimate whatsoever of the magnitude of future liability imposed on Society. In the absence of these pertinent facts, the majority is left with the following: first, a finding made by the circuit court with little support in the record that "Society had no way to recoup the expenses resulting from Liska's claim through premiums" (majority op., ¶ 48); and second, the fact that "[f]or the years 2004 through 2007, Liska submitted medical expenses totaling either $5,512.23 or $11,481.52, depending on whether Liska's health insurer is to be reimbursed." Majority op., ¶ 55. The majority states that it "can reasonably be inferred" from "previously incurred" treatment expenses that Society's "potential liability is significant." *Id.*, ¶ 46. The majority further states that "the above-listed expenses, incurred by a single insured over the course of a few years, are not de minimis and have the potential to be substantial." *Id.* Though no facts about the extent of needed ongoing treatment are in the record, the majority says "it is reasonable to assume" that the cost will be "thousands of dollars." *Id.* So in this case, the party that bears the burden of proving an act of the legislature unconstitutional beyond a reasonable doubt, by a showing that the private interests outweigh the public interests, has succeeded on the strength of assumptions and inferences drawn from *past* claims over the course of three years totaling less than $12,000, and possibly even less than $6,000.

¶ 79. As the parties themselves have acknowledged, relevant facts are missing, and because the balancing test depends on facts, I would reverse and remand this case to the Commission for an evidentiary hearing. As Society stated in its brief, "Without any evidence, neither side can present a case for the court to properly determine the effect of retroactive legislation."

Although Society has fallen far short of meeting its burden of overcoming the presumption of constitutionality, much less proving it unconstitutional beyond a reasonable doubt, I agree with Society's statement in its brief to the circuit court that "[t]he parties that do have a significant interest in this case should be allowed to present evidence in this matter to substantiate their claims." I agree and therefore respectfully dissent.

¶ 80. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this dissent.