REBECCA GRASSL BRADLEY, J. (dissenting).
 

 ¶ 58 The majority's interpretation of the carrying concealed weapons statute,
 
 Wis. Stat. § 941.23
 
 , ("Concealed Carry Statute"), the license to carry a concealed weapon statute,
 
 Wis. Stat. § 175.60
 
 , (the "Concealed Carry Licensing Statute"), and the safe use and transportation of firearms and bows statute,
 
 Wis. Stat. § 167.31
 
 , ("Safe Transport Statute"), criminalizes hunters transporting long guns to hunting grounds, domestic violence victims transporting handguns to shooting ranges, and archers transporting crossbows to archeries. I instead construe these statutes to enable citizens who lawfully own firearms, crossbows, and bows to safely transport their weapons without subjecting themselves to criminal liability. The majority concludes the statutes clearly instruct how to comply with the law. I disagree. The interplay of these statutes does not provide
 clear notice or effective direction on how to comply with the law, and the lack of clarity allows for selective enforcement of
 
 Wis. Stat. § 941.23
 
 (2013-14).
 
 [1]
 
 Consequently, the application of the Concealed Carry Statute and the Safe Transport Statute here is unconstitutional under the void for vagueness doctrine. Grandberry's conviction should be reversed.
 

 ¶ 59 In a 1930 case,
 
 Mularkey v. State
 
 ,
 
 201 Wis. 429
 
 , 432,
 
 230 N.W. 76
 
 (1930), this court adopted a definition of "go armed" to mean "on the defendant's person" or "within the defendant's reach."
 
 See
 

 State v. Asfoor
 
 ,
 
 75 Wis. 2d 411
 
 , 433-34,
 
 249 N.W.2d 529
 
 (1977) (reciting
 
 Mularkey
 
 's holding).
 
 Mularkey
 
 pulled this definition from Texas cases interpreting Texas' "unlawfully carrying arms" statute, 1911 Tex. Crim. Stat. 475, which proscribed carrying a weapon "on or about his person, saddle or in his saddle bags."
 
 See
 

 Wagner v. State
 
 ,
 
 80 Tex.Crim. 66
 
 ,
 
 188 S.W. 1001
 
 , 1002 (1916).
 
 [2]
 
 The
 
 Mularkey
 
 court's reliance on Texas case law to import "within reach" into Wisconsin's definition of "go armed" should be overruled for three reasons. First, Wisconsin's concealed carry statute never had language similar to the Texas statute.
 
 Compare
 

 Wis. Stat. § 340.69
 
 (1930) ("Any person who shall go armed with any concealed and dangerous weapon shall be punished ...")
 
 with
 
 Tex. Penal Code Art. 475 (1911) ("[I]f any person in this state shall carry on or about his person, saddle or in his saddle bags, any [weapon] he shall be punished ..."). Second, the Texas cases did not interpret "go armed" or specifically the word "carry" instead, the Texas courts focused on the "about his person" language in Texas' law. Third, the United States Supreme Court's decision in
 
 District of Columbia v. Heller
 
 ,
 
 554 U.S. 570
 
 , 584,
 
 128 S.Ct. 2783
 
 ,
 
 171 L.Ed.2d 637
 
 (2008) (quoting
 
 Muscarello v. United States
 
 ,
 
 524 U.S. 125
 
 , 143,
 
 118 S.Ct. 1911
 
 ,
 
 141 L.Ed.2d 111
 
 (1998) ), identifies the "natural meaning" of "bear arms" as to "wear, bear, or carry ... upon the person or in the clothing or in a pocket." Accordingly, this court should abandon
 
 Mularkey
 
 's"within reach" expansion of what it means to "go armed." Doing so would honor the textual distinction between going "armed with" a concealed weapon and transporting a weapon in a vehicle, while confining the Fourth Amendment standard as to what is within a person's reach or immediately accessible to vehicle searches incident to arrest.
 
 See
 

 State v. Fry
 
 ,
 
 131 Wis. 2d 153
 
 , 181,
 
 388 N.W.2d 565
 
 (1986) (holding that when police search a vehicle incident to an arrest, "the area in the defendant's reach or presence" within the vehicle is authorized under the Fourth Amendment).
 

 I. VOID FOR VAGUENESS
 

 ¶ 60 Grandberry argues the interplay of
 
 Wis. Stat. § 941.23
 
 and
 
 Wis. Stat. § 167.31
 
 renders the Concealed Carry Statute void for vagueness as applied to a person who transports a firearm in a vehicle in a manner consistent with the Safe Transport Statute. Specifically, he contends the ordinary person would not have fair notice that if he complies with the Safe Transport Statute, he nevertheless might be guilty of violating the Concealed Carry Statute. He also points out common scenarios in which it would be impossible to comply with the Concealed Carry Statute when transporting a firearm.
 

 A. Standard of Review & Applicable Principles of Law
 

 ¶ 61 Whether a statute is constitutional presents an issue of law reviewed de novo.
 

 State v. Pittman
 
 ,
 
 174 Wis. 2d 255
 
 , 276,
 
 496 N.W.2d 74
 
 (1993). Although statutes are generally presumed constitutional, when the challenge is not to the statute itself, but to how it is applied, no presumption exists.
 
 Soc'y Ins. v. LIRC
 
 ,
 
 2010 WI 68
 
 , ¶ 27,
 
 326 Wis. 2d 444
 
 ,
 
 786 N.W.2d 385
 
 ("While we presume a statute is constitutional, we do not presume that the State applies statutes in a constitutional manner."). "As such, neither the challenger nor the enforcer of the statute face a presumption in an as-applied challenge."
 

 Id.
 

 ¶ 62 The void for vagueness doctrine protects individuals from unreasonable prosecution. The Fourteenth Amendment to the United States Constitution declares that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. This constitutional guarantee is protected when courts declare a statute invalid that would otherwise violate individual procedural due process.
 
 Kolender v. Lawson
 
 ,
 
 461 U.S. 352
 
 , 357,
 
 103 S.Ct. 1855
 
 ,
 
 75 L.Ed.2d 903
 
 (1983). Courts may invalidate unconstitutional statutes by applying the void for vagueness doctrine.
 
 Id.
 
 "[T]he void-for-vagueness doctrine requires a penal statute to define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."
 

 Id.
 

 ¶ 63 This court set forth a two-part test in applying the void-for-vagueness doctrine: (1) is the statute "sufficiently definite to give persons of ordinary intelligence who seek to avoid its penalties fair notice of the conduct required or prohibited"? and (2) does the statute "provide standards for those who enforce the laws and adjudicate guilt" so the statute can be applied consistently?
 
 State v. McManus
 
 ,
 
 152 Wis. 2d 113
 
 , 135,
 
 447 N.W.2d 654
 
 (1989). "If the statute is so obscure
 that people of common intelligence must necessarily guess at its meaning and differ as to its applicability, it is unconstitutional."
 
 City of Oak Creek v. King
 
 ,
 
 148 Wis. 2d 532
 
 , 546,
 
 436 N.W.2d 285
 
 (1989). Of particular relevance here, if a statute lacks adequate notice of what is prohibited, causing "basic policy matters [being left] to policemen, judges, and juries for resolution on an ad hoc and subjective basis," it is unconstitutional.
 
 Dog Fed'n of Wis., Inc. v. City of So. Milwaukee
 
 ,
 
 178 Wis. 2d 353
 
 , 359-60,
 
 504 N.W.2d 375
 
 (1993) (quoting
 
 Grayned v. City of Rockford
 
 ,
 
 408 U.S. 104
 
 , 108-09,
 
 92 S.Ct. 2294
 
 ,
 
 33 L.Ed.2d 222
 
 (1972) ).
 

 ¶ 64 In assessing the clarity of a statute, normally only "a reasonable degree of clarity" is required for it to be constitutional; however, when the statute infringes on a constitutionally protected right, the law requires more exacting precision, and "a more stringent vagueness test should apply."
 

 Id.
 

 (first quoting
 
 Roberts v. United States Jaycees
 
 ,
 
 468 U.S. 609
 
 , 629,
 
 104 S.Ct. 3244
 
 ,
 
 82 L.Ed.2d 462
 
 (1984) ; then citing
 
 Grayned
 
 ,
 
 408 U.S. at 110
 
 ,
 
 92 S.Ct. 2294
 
 ;
 

 Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.
 
 ,
 
 455 U.S. 489
 
 , 499,
 
 102 S.Ct. 1186
 
 ,
 
 71 L.Ed.2d 362
 
 (1982) ).
 
 [3]
 

 B. Application
 

 ¶ 65 The Concealed Carry Statute makes it a crime to carry "a concealed and dangerous weapon" unless an exception applies.
 
 Wis. Stat. § 941.23
 
 . The exception at issue here covers a "licensee" who obtained a license under
 
 Wis. Stat. § 175.60
 
 .
 
 Wis. Stat. § 941.23
 
 (2)(d). Section 175.60 allows a person who owns a handgun, electric weapon, or billy club to get a license, which authorizes carrying the weapon concealed. However, the Safe Transport Statute allows any person to "place, possess, or transport a firearm, bow, or crossbow in or on a vehicle" as long as the "firearm is unloaded or is a handgun" and as long as a bow does "not have an arrow nocked" and a crossbow is not "cocked or is unloaded and enclosed."
 
 Wis. Stat. § 167.31
 
 (2)(b). The Safe Transport Statute does not delineate where in a vehicle the weapon must be placed and it does not contain any licensing requirements.
 

 ¶ 66 The question is whether these statutes give fair notice that a person who wants to transport a weapon in his vehicle must either have a concealed carry license or put the weapon out of reach. And, does the State's admission that law enforcement looks the other way when a hunter has a long gun concealed in his vehicle demonstrate that
 
 Wis. Stat. § 941.23
 
 violates constitutional due process guarantees?
 

 1. Fair Notice
 

 ¶ 67 This court reviews whether fair notice exists from the perspective of a person of ordinary intelligence.
 
 McManus
 
 ,
 
 152 Wis. 2d at 135
 
 ,
 
 447 N.W.2d 654
 
 . Would a person of ordinary intelligence know from reading the statutes that in order to transport a firearm in his
 vehicle he must get a license or put it out of reach? Not likely. Instead,
 
 Wis. Stat. § 941.23
 
 when read together with the Safe Transport Statute is more likely to "trap the innocent by not providing fair warning" of what is permissible and what is prohibited under law.
 
 Grayned
 
 ,
 
 408 U.S. at 108-09
 
 ,
 
 92 S.Ct. 2294
 
 .
 

 ¶ 68 Wisconsin Stat. § 941.23 broadly proscribes carrying a concealed weapon unless certain exceptions apply. This statute informs any person who is not a current or former law enforcement officer that in order to lawfully carry a concealed handgun, electric weapon, or billy club outside of that person's own home, land, or business
 
 [4]
 
 a license is required under
 
 Wis. Stat. § 175.60
 
 . A license is available only for those three weapons-but not a rifle, shotgun, crossbow or bow.
 
 Wis. Stat. § 175.60
 
 (1)(j). Section 941.23(1)(ag) adopts the definition of "carry" given in § 175.60(1)(ag), which tells a person that " '[c]arry' means go armed with." Neither statute defines "carry" to mean "have within reach." Section 175.60 also prohibits licenses for those "less than 21 years of age."
 
 Wis. Stat. § 175.60
 
 (3)(a).
 

 ¶ 69 These statutes certainly give fair notice that anyone over the age of 21 who wants to carry a concealed handgun, electric weapon, or billy club outside his property or business must get a license. But the language of these statutes does not mention vehicles or transportation at all; further, these statutes do not allow the owner of a long gun, bow, or crossbow, or any gun owner under the age of 21 to get a license. Significantly, these statutes define "carry" only as "go armed with." There is nothing in the statutory text
 suggesting that "carry" means having a weapon "within reach" in a vehicle. The "within reach" part of the "carry" definition comes from our case law, not from the statutes.
 

 ¶ 70 Although, generally speaking, every person is presumed to know the law,
 
 see
 

 Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship
 
 ,
 
 2002 WI 108
 
 , ¶ 13 n.4,
 
 255 Wis. 2d 447
 
 ,
 
 649 N.W.2d 626
 
 , this case turns on whether the statutory language gives fair notice to a person of ordinary intelligence, not whether this court's decisions interpreting the statutory language do.
 

 ¶ 71 In addressing "fair notice" this court observed:
 

 Actual notice of the statute may be irrelevant in applying the concept of fair notice. Courts require the law be clear so that those who consult the law are not confused or misled. Justice Holmes observed that "[a]lthough it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. [To make the warning fair, so far as possible the line should be clear.]"
 

 State v. Neumann
 
 ,
 
 2013 WI 58
 
 , ¶ 50 n.29,
 
 348 Wis. 2d 455
 
 ,
 
 832 N.W.2d 560
 
 (quoting
 
 McBoyle v. United States
 
 ,
 
 283 U.S. 25
 
 , 27,
 
 51 S.Ct. 340
 
 ,
 
 75 L.Ed. 816
 
 (1931) ). The line is far from clear in the matter before this court, except perhaps to a lawyer so well-versed in the laws governing weapons as to be aware of this court's reach into Fourth Amendment jurisprudence, which transfigured the rather simple concept of "carrying" into something altogether detached from the person.
 

 ¶ 72 A person of ordinary intelligence who is trying to learn the legal ways to transport a firearm (or
 bow or crossbow) would logically turn to the Safe Transport Statute because it addresses transportation of these weapons in vehicles. The text of the Safe Transport Statute allows a person to "place, possess, or transport a firearm, bow, or crossbow in or on a vehicle" if the firearm is unloaded or is a handgun, if a bow does not have an arrow nocked, and if a crossbow is either not cocked or is unloaded and encased. The Safe Transport Statute says nothing about where any weapon must be placed in the vehicle, and specifically requires concealment of one type of weapon as one method of compliance. The Safe Transport Statute plainly gives fair notice that: (1) a loaded handgun can be placed, possessed or transported in a vehicle; (2) any other unloaded firearm can be placed, possessed or transported in a vehicle; (3) a bow without an arrow nocked can be placed, possessed or transported in a vehicle; and (4) a crossbow can be placed, possessed or transported in a vehicle if it is either not cocked or is unloaded and in a carrying case. The Safe Transport Statute's text does not say that only a concealed carry licensee can place, possess or transport a handgun in a vehicle. Further, it gives no instruction on specifically where in the vehicle these weapons must be placed.
 

 ¶ 73 The majority concludes that these statutes are not void for vagueness because Grandberry could have complied
 with both by either getting a concealed carry license or putting his handgun out of reach in his vehicle.
 
 [5]
 
 How would a person of ordinary intelligence
 know this? The text of both statutes does not alert a gun owner of any connection between the two, much less a dependency of the Safe Transport Statute on the Concealed Carry Licensing Statute. Other states' statutes combine their carrying a weapon statute with transportation of a weapon in a vehicle statute so a person clearly knows what is lawful and what will subject a person to prosecution.
 
 See, e.g.
 
 ,
 
 Tex. Penal Code Ann. § 46.02
 
 (West 2017) ;
 
 Ohio Rev. Code Ann. § 2923.12
 
 (West 2017-18). Wisconsin's Concealed Carry Licensing Statute limits licenses to handguns, billy clubs, and electric weapons and requires all licensees to be at least 21 years old. If the majority's conclusion is correct, then a large group of gun (and all bow/crossbow) owners, for whom concealed carry licenses are unavailable, are treated differently than handgun owners 21 years old or older. Under the majority's statutory construction, it is impossible for long gun owners who drive small vehicles without trunks to lawfully transport their guns. Additionally, most gun ranges require weapons to be encased when they are brought into these facilities.
 
 [6]
 
 However, such
 concealment is prohibited by the Concealed Carry Statute, making it impossible to lawfully take a long gun from a car into a range.
 

 ¶ 74 The majority's conclusion absolves the legislature from enacting laws that give fair notice to Wisconsin citizens who exercise their Second Amendment right to bear arms on how to lawfully transport them. Instead, the majority declares it reasonable to expect the ordinary person reading the statutes to do the work of a lawyer and study, analyze, and properly interpret case law (assuming he can find it) in order to reconcile two conflicting statutes. Even more absurdly, the majority expects, indeed requires a person of ordinary intelligence to know what is "within reach" despite the inability of the justices on this court to define it.
 
 See
 
 majority op., ¶ 31 (recognizing "it [is] impossible for this court to establish a bright-line rule setting forth which parts of a vehicle are and are not within reach").
 

 ¶ 75 Even if a person of ordinary intelligence was able to find and read every applicable Wisconsin case and to understand that a gun placed "within reach" in a vehicle violates
 
 Wis. Stat. § 941.23
 
 , that person would also have necessarily read footnote 2 in
 
 State v. Walls
 
 ,
 
 190 Wis. 2d 65
 
 , 69 n.2,
 
 526 N.W.2d 765
 
 (Ct. App. 1994), which provides:
 

 We are mindful "that there is a long tradition of widespread lawful gun ownership by private individuals in this country."
 
 Staples v. United States
 
 ,
 
 511 U.S. 600
 
 ,
 
 114 S.Ct. 1793
 
 ,
 
 128 L.Ed.2d 608
 
 (1994). Thus, our conclusion in this case in no way limits the
 
 lawful
 
 placement, possession, or transportation
 of, unloaded (or unstrung) and encased, firearms, bows, or crossbows in vehicles as permitted by § 167.31(2)(b)....
 

 ¶ 76 After reading this footnote, a person of ordinary intelligence would turn to the current Safe Transport Statute, which allows transportation of a handgun in a vehicle.
 
 Walls
 
 , in essence, says transportation of a gun in a vehicle does not violate
 
 Wis. Stat. § 941.23
 
 as long as a person follows the Safe Transport Statute.
 

 ¶ 77 The text of these statutes leads to uncertainty and lacks "sufficient definiteness [such] that ordinary people can understand what conduct is prohibited."
 
 Kolender
 
 ,
 
 461 U.S. at 357
 
 ,
 
 103 S.Ct. 1855
 
 . The statutes here do not even give a reasonable degree of clarity, let alone meet the heightened standard required for statutes that infringe upon constitutionally protected rights.
 
 Grayned
 
 ,
 
 408 U.S. at 110
 
 ,
 
 92 S.Ct. 2294
 
 ;
 
 Vill. of Hoffman Estates
 
 ,
 
 455 U.S. at 499
 
 ,
 
 102 S.Ct. 1186
 
 . These statutes do not give fair notice to the person of ordinary intelligence who needs to transport her firearm or bow or crossbow from her home to another destination of how to lawfully accomplish this routine activity; therefore, the first part of the void for vagueness test is satisfied.
 

 2. Standards for Enforcement
 

 ¶ 78 The second part of the void for vagueness test requires this court to analyze whether the text of the statutes give clear guidance to those who enforce and adjudicate the laws. Our statutes must be capable of being enforced objectively and should not result in ad hoc, discriminatory, or subjective enforcement.
 
 Grayned
 
 ,
 
 408 U.S. at 108-09
 
 ,
 
 92 S.Ct. 2294
 
 ;
 
 Kolender
 
 ,
 
 461 U.S. at 357-58
 
 ,
 
 103 S.Ct. 1855
 
 . Here, the State conceded that law enforcement
 looks the other way when hunters carry their long guns concealed in violation of
 
 Wis. Stat. § 941.23
 
 . This is necessary because hunters must transport their long guns to reach their hunting destinations, and Wisconsin does not issue concealed carry licenses for long guns. Finding a place in most vehicles where a group of hunters traveling together could place multiple long guns without violating § 941.23 is highly unlikely if not altogether impossible. If law enforcement arrested hunters every time they violated § 941.23, our court system would be overwhelmed with thousands of such cases and repeat offenders every hunting season.
 
 [7]
 

 ¶ 79 The text of these statutes unavoidably encourages selective enforcement and prosecution, thereby satisfying the second part of the void for vagueness test because the statutes currently permit "a standardless sweep allow[ing] policemen, prosecutors and juries to pursue their personal predilections."
 
 Kolender
 
 ,
 
 461 U.S. at 358
 
 ,
 
 103 S.Ct. 1855
 
 (quoting
 
 Smith v. Goguen
 
 ,
 
 415 U.S. 566
 
 , 575,
 
 94 S.Ct. 1242
 
 ,
 
 39 L.Ed.2d 605
 
 (1974) ).
 

 II. "GO ARMED WITH" DEFINITION
 

 ¶ 80 I also write separately because our continued adherence to
 
 Mularkey
 
 's importation
 of "within reach" as Wisconsin's definition for "go armed" is textually and constitutionally unsound. Wisconsin Stat. § 941.23 says: "Any person, other than one of
 the following, who carries a concealed and dangerous weapon is guilty of a Class A misdemeanor." Section 941.23 does not define "carries," but rather cross references to a definition provided in Wisconsin Stat. § 175.60.
 
 See
 
 § 941.23(1)(ag) (" 'Carry' has the meaning given in s. 175.60(1)(ag)"). Section 175.60 defines "[c]arry" to mean "go armed with."
 
 Wis. Stat. § 175.60
 
 (1)(ag). Section 175.60 is additionally linked to § 941.23 because the latter exempts concealed carry licensees from its prohibition of concealed carry.
 
 See
 

 Wis. Stat. § 941.23
 
 (2)(d).
 

 ¶ 81 As noted, our case law holds that to "go armed" means to have the weapon "on the defendant's person or that the weapon must have been within the defendant's reach and that the defendant was aware of the presence of the weapon."
 
 Asfoor
 
 ,
 
 75 Wis. 2d at 433-34
 
 ,
 
 249 N.W.2d 529
 
 (citing
 
 Mularkey
 
 ,
 
 201 Wis. at 432
 
 ).
 

 ¶ 82 This judicial expansion of the "go armed" definition to encompass having a firearm "within reach" has no basis in Wisconsin law and contradicts the definition of "bear arms" recognized by the United States Supreme Court in
 
 Heller
 
 . We should take this opportunity to discard the judicially-invented "within reach" part of this definition and align our definition of "go armed" with
 
 Heller
 
 's definition of "bear arms." The Court in
 
 Heller
 
 explained that "bear" means "carry," and adopted the "most familiar meaning" of "carries a firearm" as: to "wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person."
 
 554 U.S. at 584
 
 ,
 
 128 S.Ct. 2783
 
 (quoting
 
 Muscarello v. United States
 
 ,
 
 524 U.S. 125
 
 , 130, 143,
 
 118 S.Ct. 1911
 
 ,
 
 141 L.Ed.2d 111
 
 (1998) ) (interpreting the meaning of "carries a firearm" in a federal criminal statute).
 

 ¶ 83 Wisconsin should adopt
 
 Heller
 
 's definition of "carry" to mean the weapon is "upon the person or in the clothing or in a pocket." Both the United States Constitution and the Wisconsin Constitution protect the right of the people to "bear" arms. The United States Supreme Court recognizes that "bear" means "carry" and what it means to carry is the pivotal word in this case. Wisconsin statutes define "carry" to mean "go armed with." Constitutionally and textually, this can only mean upon the person or in the person's clothing.
 

 ¶ 84 When the
 
 Mularkey
 
 court injected "within reach" into our definition of "go armed" in 1930, it did so based on a Texas case interpreting Texas' unlawfully carrying arms statute, which contains language Wisconsin's statute never used. Specifically, the Texas statute provided:
 

 Unlawfully carrying arms
 
 .-If any person in this state shall carry
 
 on or about
 
 his person, saddle, or in his saddle bags, any pistol, dirk, dagger, slung shot, sword cane, spear, or knuckles made of any metal or any hard substance, bowie knife, or any other knife manufactured or sold for purpose of offense or defense, he shall be punished by fine or not less than one hundred dollars nor more than two hundred dollars, or by confinement in the county jail not less than thirty days nor more than twelve months, or by both such fine and imprisonment.
 

 1911 Tex. Crim. Stat. 475 (second emphasis added). The crucial difference between the Texas statute and Wisconsin's is the presence of "about his person" in Texas' statute, language that never appeared in Wisconsin's concealed carry statute.
 
 See
 

 State v. Dundon
 
 ,
 
 226 Wis. 2d 654
 
 , 672,
 
 594 N.W.2d 780
 
 (1999) (summarizing the history
 of
 
 Wis. Stat. § 941.23
 
 ). One Texas court equated "about his person" with having a pistol on a
 wagon seat nearby-in other words, within reach.
 
 Garrett v. State
 
 ,
 
 25 S.W. 285
 
 (1894). In contrast, the Wisconsin legislature enacted the first concealed weapons law in 1872, and it used "person shall go armed with" language.
 
 Dundon
 
 ,
 
 226 Wis. 2d at 671
 
 ,
 
 594 N.W.2d 780
 
 (quoting § 1, ch. 7, Laws of 1872). Although the statute was amended in 1878, this "shall go armed" language remained essentially the same: "Any person who shall go armed with any concealed and dangerous weapon shall be punished...."
 
 Dundon
 
 ,
 
 226 Wis. 2d at 672
 
 ,
 
 594 N.W.2d 780
 
 (quoting
 
 Wis. Stat. § 4397
 
 (1878) ). The legislature did not change the "go armed with" language until it enacted 2011 Wis. Act 35, which included both the current version of § 941.23 and the licensing statute,
 
 Wis. Stat. § 175.60
 
 . And then the change was merely structural and not substantive; the legislature replaced the "go armed with" language with "carries" and said " '[c]arry' has the meaning given in s. 175.60(1)(ag)."
 
 [8]
 
 Section 175.60(1)(ag) defines "carry" to mean "go armed with." Wisconsin never enacted language like the Texas statute; therefore,
 
 Mularkey
 
 's reliance upon Texas cases was improper in 1930 and remains improper now. Nothing in the text of Wisconsin's concealed carry statutes, historically or currently, proscribes concealment of a weapon "within reach" in a vehicle. This criminalization was accomplished by the judiciary reading something into § 941.23 that is not there, resulting in a statutory construction without basis in the text and therefore unknowable to the average citizen responsible for complying with the law.
 

 ¶ 85 Some states apply these statutes only "where the weapon is worn on the person of the defendant." W.M. Moldoff, Annotation,
 
 Offense of carrying concealed weapon as affected by manner of carrying or place of concealment
 
 ,
 
 43 A.L.R.2d 492
 
 , § 4(d) ;
 
 see
 

 State v. Weston
 
 ,
 
 108 S.C. 383
 
 ,
 
 94 S.E. 871
 
 (1918) (holding that pistol placed in a satchel or suitcase does not constitute "carrying an unlawful weapon");
 
 Watson v. Stone
 
 ,
 
 148 Fla. 516
 
 ,
 
 4 So.2d 700
 
 (1941) (holding that pistol in the glove pocket attached to the inside of the dash of his vehicle did not violate statute). The Florida Supreme Court in
 
 Watson
 
 distinguished cases from those states that specifically use the "on or about the person" language in their statutes, concluding that because the Florida statute does not include the "on or about" language, the pistol placement in the glove pocket did not violate Florida's law prohibiting carrying or having a pistol in one's manual possession. 4 So. at 702. The Florida Supreme Court specifically distinguished Florida's statutory language of "carrying" or "having a pistol in his manual possession" from foreign statutes "making it unlawful for the weapon of the defendant to be on, under or behind the seat, cushion, door, side floor or pockets of an automobile."
 
 Id.
 
 This same reasoning should have been applied when
 
 Mularkey
 
 was decided-the Wisconsin statute does not use the "on or about" language and instead prohibits concealed "carrying"; therefore, this court misguidedly added the "within reach" language to the definition of "go armed."
 

 ¶ 86 While adhering to precedent is an important doctrine for lending stability to the law, not every decision deserves stare decisis effect. After all, the purpose of stare decisis "is to make us say that what is false under proper analysis must nonetheless be held to be true, all in the interest of stability." Antonin Scalia,
 
 A Matter of Interpretation: Federal Courts and the
 

 Law
 
 138-40 (1997). However, "[t]he principle of stare decisis does not compel us to adhere to erroneous
 precedents or refuse to correct our own mistakes."
 
 State v. Outagamie Cty. Bd. of Adjustment
 
 ,
 
 2001 WI 78
 
 , ¶ 31,
 
 244 Wis. 2d 613
 
 ,
 
 628 N.W.2d 376
 
 . This is particularly true when following flawed precedent criminalizes behavior that a person of ordinary intelligence would reasonably consider statutorily permissible. "Reflexively cloaking every judicial opinion with the adornment of stare decisis threatens the rule of law, particularly when applied to interpretations wholly unsupported by the statute's text."
 
 Manitowoc v. Lanning
 
 ,
 
 2018 WI 6
 
 ,
 
 379 Wis. 2d 189
 
 ,
 
 906 N.W.2d 130
 
 (R. Grassl Bradley, J., concurring).
 

 ¶ 87 "Stare decisis is neither a straightjacket nor an immutable rule."
 
 Johnson Controls, Inc. v. Employers Ins. of Wausau
 
 ,
 
 2003 WI 108
 
 , ¶ 100,
 
 264 Wis. 2d 60
 
 ,
 
 665 N.W.2d 257
 
 (quoting
 
 Carpenters Local Union No. 26 v. United States Fid. & Guar. Co.
 
 ,
 
 215 F.3d 136
 
 , 141 (1st Cir. 2000) ). There are circumstances in which a court may overturn "outdated or erroneous holdings."
 
 Johnson Controls, Inc.
 
 ,
 
 264 Wis. 2d 60
 
 , ¶ 96,
 
 665 N.W.2d 257
 
 (quoted source omitted). Among other factors, in deciding "whether to depart from stare decisis" this court considers "whether the prior decision is unsound in principle" and "whether it is unworkable in practice...."
 
 Id.
 
 , ¶ 99 (citations omitted). This case vividly exemplifies both factors. The foundation of
 
 Mularkey
 
 's adoption of "within reach" rests not on the text of Wisconsin's statute but on Texas' markedly different statutory language. This court's interpretation of "go armed with" as encompassing having a firearm "within reach" clouds a plain reading of the statutes, thereby impairing the ability of any person of ordinary intelligence to comply with the law.
 

 ¶ 88 In this case, "[i]t is well to keep in mind just how thoroughly [the
 
 Mularkey
 
 court's opinion] rewrote the statute it purported to construe."
 

 Johnson v. Transp. Agency
 
 ,
 
 480 U.S. 616
 
 , 670,
 
 107 S.Ct. 1442
 
 ,
 
 94 L.Ed.2d 615
 
 (1987) (Scalia, J., dissenting). Because
 
 Mularkey
 
 's interpretation of the statute's "go armed with" language reaches well beyond the statutory text, I decline to perpetuate this court's error on the altar of stare decisis, particularly when the error creates a trap for the well-intentioned but unwary citizen.
 

 ¶ 89 Correcting the error that originated in
 
 Mularkey
 
 and survived for nearly 90 years would quite appropriately eliminate "within reach" from concealed carry cases, confining the "within reach" concept to Fourth Amendment incident to arrest searches where it belongs.
 
 [9]
 
 The majority opinion instead attempts to ascribe a different meaning of "within reach" in concealed carry cases than Fourth Amendment
 search incident to arrest cases give it,
 
 [10]
 
 but it could avoid this
 linguistic fallacy by applying the definition of "go armed" as set forth by the United States Supreme Court in
 
 Heller
 
 to mean "upon the person or in the clothing or in a pocket." Because this court continues to define "go armed" under
 
 Wis. Stat. § 941.23
 
 to include "within reach," I cannot join it. I would align Wisconsin law with the constitutions of both this state and the United States and apply the original meaning of "go armed with" as defined in
 
 Heller
 
 . Because the majority renders many of Wisconsin's law-abiding gun owners criminals, but for the benevolence of law enforcement and the discretion of prosecutors, I respectfully dissent.
 

 This statute was the precursor to the Concealed Carry Statute, and provided that "[a]ny person who shall go armed with any concealed and dangerous weapon shall be punished."
 
 Wis. Stat. § 340.69
 
 (1929-30).
 

 "We assume that the legislature's intent is expressed in the statutory language.... It is the enacted law, not the unenacted intent, that is binding on the public."
 
 State ex rel. Kalal v. Circuit Court for Dane Cty.
 
 ,
 
 2004 WI 58
 
 , ¶ 44,
 
 271 Wis. 2d 633
 
 ,
 
 681 N.W.2d 110
 
 .
 

 Grandberry's failure to make an argument grounded in the Second Amendment does not mean we should ignore the fundamental constitutional right to bear arms in analyzing his void for vagueness challenge.
 
 See
 

 State v. Cole
 
 ,
 
 2003 WI 112
 
 , ¶ 20,
 
 264 Wis. 2d 520
 
 ,
 
 665 N.W.2d 328
 
 ("We find that the state constitutional right to bear arms is fundamental."). Article I, Section 25 of the Wisconsin Constitution provides: "The people have the right to keep and bear arms for security, defense, hunting, recreation or any other lawful purpose." The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. I note that Grandberry did raise this fundamental right in the circuit court.
 

 Wisconsin Stat. § 941.23(2)(e) allows a person to carry concealed weapons in these places.
 

 According to the record, Grandberry had lawfully purchased the firearm involved, passed a background check, attended the concealed carry licensing class, and had sent in his paperwork to obtain the license at the time of the traffic stop in this case. Further, according to Grandberry, he did not lie to the police when asked whether he had a concealed carry license; instead, he told the officer he had sent in the paperwork for his license. His application for a license was denied because of this case.
 

 See, e.g.
 
 ,
 
 Range Safety Rules
 
 , Wisconsin Firearms Training Center, https://www.wifirearms.com/rangemanagement/info.cfm?title=range-safety-rules (last visited Feb. 27, 2018) ("All firearms are to be unloaded, cased, with actions open when entering or leaving the facility.");
 

 Range Rules
 

 , The Range of Richfield, https://therangewi.com/range-rules/ (last visited Feb. 27, 2018) ("All firearms are to be unloaded, cased, with actions open when entering or leaving the facility."); Shooting Range Indus. LLC,
 
 First Time at Shooting Range? Proper Indoor &
 
 Outdoor Gun Range Etiquette & Rules for Beginners http://www.shootingrangeindustries.com/first-time-shooting-range-proper-indoor-outdoor-gun-range-etiquette-rules-beginners/ (last visited Feb. 27, 2018) ("It is proper to have your gun in a gun case of some type. You never want to walk in with a naked gun.")
 

 A variety of other problematic scenarios further support my conclusion. For example, how is a 19-year-old who owns a handgun for personal protection supposed to transport her handgun from her home to her grandmother's house for the holidays while driving her subcompact hatchback car? She simply cannot do so without violating
 
 Wis. Stat. § 941.23
 
 and subjecting herself to criminal liability.
 

 See
 

 Wis. Stat. § 941.23
 
 (1)(ag).
 

 The Fourth Amendment vehicle search incident to arrest cases broadly define what is in within reach (or accessible to the defendant without leaving the vehicle) and therefore searchable without a warrant. See
 
 Arizona v. Gant
 
 ,
 
 556 U.S. 332
 
 , 335,
 
 129 S.Ct. 1710
 
 ,
 
 173 L.Ed.2d 485
 
 (2009) (clarifying
 
 Chimel v. California
 
 ,
 
 395 U.S. 752
 
 ,
 
 89 S.Ct. 2034
 
 ,
 
 23 L.Ed.2d 685
 
 (1969) and
 
 New York v. Belton
 
 ,
 
 453 U.S. 454
 
 ,
 
 101 S.Ct. 2860
 
 ,
 
 69 L.Ed.2d 768
 
 (1981), but agreeing that police who search incident to arrest may search any area "within an arrestee's 'immediate control,' meaning 'the area from within which he might gain possession of a weapon or destructible evidence.' "). Courts have held this includes the cargo area in a hatchback car, the trunk area if accessible from the back seat, and a covered cargo area in a sport utility vehicle.
 
 See
 

 United States v. Stegall
 
 ,
 
 850 F.3d 981
 
 , 985 (8th Cir. 2017) ;
 
 United States v. Allen
 
 ,
 
 469 F.3d 11
 
 , 15-16 (1st Cir. 2006) ;
 
 United States v. Arnold
 
 ,
 
 388 F.3d 237
 
 , 239-41 (7th Cir. 2004) (collecting cases) (protective search case);
 
 United States v. Olguin-Rivera
 
 ,
 
 168 F.3d 1203
 
 , 1206 n.1 (10th Cir. 1999) (collecting cases).
 

 The majority's attempt to separate "within reach" in the concealed carry context from the incident to arrest framework may create more problems than it purports to resolve. Going forward, the majority's decision prevents the State from using any "within reach" incident to arrest cases as the basis for argument in a concealed carry case. It also necessitates a trial in
 
 every
 
 concealed carry "within reach" case, regardless of where the weapon is located in the car. Consequently, even if a handgun is sitting on a defendant driver's seat, a jury would need to decide whether the handgun was "within reach" instead of allowing the circuit court to conclude as a matter of law that the carrying element of the test was satisfied.