COURT OF APPEALS
DECISION
DATED AND FILED

June 2, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2024AP1844**

STATE OF WISCONSIN

Cir. Ct. No.  2022CV709

IN COURT OF APPEALS
DISTRICT I

ESTATE OF WALTER D. MCGUINNESS AND JUDITH MCGUINNESS,

PLAINTIFFS-RESPONDENTS-CROSS-APPELLANTS,

UNITEDHEALTHCARE INSURANCE COMPANY,

INVOLUNTARY-PLAINTIFF,

V.

AUTO-OWNERS INSURANCE COMPANY AND TREIDER INDUSTRIES, INC. D/B/A TWEETY'S COMPLETE PAINTING SERVICE,

DEFENDANTS-APPELLANTS-CROSS-RESPONDENTS,

ABC INSURANCE COMPANY,

DEFENDANT.

APPEAL and CROSS-APPEAL from a judgment and an order of the circuit court for Milwaukee County: GWENDOLYN G. CONNOLLY, Judge, and WILLIAM W. BRASH, III, Reserve Judge. *Affirmed*.

Before Donald, C.J., Colón, P.J., and Geenen, J.

¶1    DONALD, C.J. Auto-Owners Insurance Company and Treider Industries, Inc. (Treider) appeal from the judgment and order finding it negligent in Walter McGuinness's death and awarding $1,665,000 in damages in favor of the Estate of Walter McGuiness and Judith McGuinness, Walter's wife. The Estate and Judith (collectively the Estate) cross-appeal from the same, arguing that the statutory cap on loss of society and companionship pursuant to WIS. STAT. § 895.04(4) (2023-34)[1] is unconstitutional. Treider argues that there was insufficient evidence to support the verdict and damages award; the testimony of four expert witnesses should have been excluded; a spoliation jury instruction was unwarranted; and a new trial should be ordered as a result of the Estate's prejudicial arguments. We conclude that these arguments fail. We further conclude that the statutory cap is constitutional. Therefore, we affirm.

## BACKGROUND

¶2    This case arises from Walter's fatal injury caused by falling on the basement stairway in his home on October 5, 2020. It is undisputed that prior to the incident, the McGuinnesses hired Treider to paint the interior of their home. In preparation, employees removed the handrail from the wall in the stairway to the McGuinnesses' basement on October 2. On October 5, Judith and Daniel

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

McGuinness, their son, were in the house and heard a thump when Walter fell. Judith and Daniel found Walter and called 911 for emergency help, but Walter died as a result of his head and neck injuries sustained from the fall.

¶3      The Estate filed an action for negligence in February 2022. It argued that Treider was negligent for removing the handrail from the stairway for multiple days while painting the McGuinnesses' home. The Estate named experts to testify to safety standards related to stairs, handrails, and painting; the mechanics and timing of Walter's fall; and Walter's cause of death and conscious pain and suffering. Treider moved to preclude several expert witnesses in a *Daubert*[2] challenge, asserting that the experts could not support opinions on how and why Walter fell and whether he experienced conscious pain and suffering. The circuit court denied the motion, concluding the expert witnesses were sufficiently reliable and relevant.[3]

¶4      The case proceeded to trial. An issue arose when Bernard Treider, the owner of the company, and Max Netschajiwsky, the Treider employee who removed the handrail, claimed for the first time at trial that Netschajiwsky taped over the doorway to warn the household about the missing handrail. The Estate impeached both men's testimony with their deposition testimony that did not mention taping the doorway. Bernard also testified that he received a photograph from Netschajiwsky of the taped doorway; however, he deleted it. Further, Bernard testified that he called Judith and Walter and updated them on the

---

[2] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[3] The Honorable William W. Brash, III presided over the proceedings through trial and entered the order denying motions after verdict. The Honorable Gwendolyn G. Connolly entered the judgment. We refer to either judge as the circuit court.

painting job, informed them that the handrail was off, and was told they would stay out of the basement.

¶5     Judith denied that Netschajiwsky and Bernard told her or Walter that the handrail had been removed and denied that warning tape had been placed across the opening to the stairway.  Treider did not disclose any photographs in discovery, and during Bernard's deposition, he stated only that Netschajiwsky might have photographs.  As a result, the Estate requested, over Treider's objection, that the circuit court give a spoliation instruction that the jury could "infer that these actions unfavorably affect [Bernard's] credibility."

¶6     The jury found that Treider was negligent on or prior to the date of Walter's fall, and its negligence was a cause of Walter's injuries.  While the jury also found Walter negligent and that his negligence was a cause of his injuries, the jury attributed 90% of the negligence to Treider and 10% to Walter.  The jury awarded $1.5 million to the Estate as compensation for Walter's pain and suffering from the accident up to the time of his death and $5 million to Judith for loss of society and companionship.

¶7     The parties filed motions after verdict.  Treider argued the circuit court should change two of the jury's verdict answers: that Treider's negligence was a cause of Walter's injuries because there was no evidence of the cause of Walter's fall presented at trial; and that the award for pain and suffering should be reduced to $0 because the evidence showed that Walter experienced pain and suffering for less than 1.2 seconds.  The Estate argued that the circuit court should

not apply the statutory cap on loss of society and companionship pursuant to WIS. STAT. § 895.04(4) because it is unconstitutional.[4]

¶8    The circuit court denied both motions. After reducing the awards for Walter's 10% contributory negligence and the statutory cap, the court entered a judgment of $1.35 million for the Estate and $315,000 for Judith. This appeal and cross-appeal follow.

## DISCUSSION

¶9    Treider argues that the judgment should be reversed and a new trial ordered. We group its arguments under four issues: sufficiency of the evidence of causation and damages, admission of expert witness testimony, the spoliation jury instruction, and prejudicial arguments by the Estate. In its cross-appeal, the Estate argues that WIS. STAT. § 895.04(4) is unconstitutional.

### I.    Treider's Arguments

### A. Sufficiency of the Evidence

¶10    Treider argues that the jury resorted to impermissible speculation in reaching its verdicts. First, it asserts there was no evidence presented on the causation of Walter's fall. Second, it contends that Walter's pain and suffering occurred over such a short time span that the jury was incapable of fairly and reasonably determining damages.

---

[4] Judith's recovery for the loss of society and companionship damages awarded by the jury is capped by WIS. STAT. § 895.04(4). The statute caps the damages as "not to exceed $500,000 per occurrence in the case of a deceased minor, or $350,000 per occurrence in the case of a deceased adult[.]"

¶11 "Appellate courts in Wisconsin will sustain a jury verdict if there is any credible evidence to support it." *Morden v. Continental AG*, 2000 WI 51, ¶38, 235 Wis. 2d 325, 611 N.W.2d 659. "To reverse this court must be able to say that there is such a complete failure of proof that the verdict must be based on speculation." *Coryell v. Conn*, 88 Wis. 2d 310, 315, 276 N.W.2d 723 (1979). In our review, we consider the "evidence in a light most favorable to the jury's determination … because it is the role of the jury, not an appellate court, to balance the credibility of witnesses and the weight given to the testimony of those witnesses." *Morden*, 235 Wis. 2d 325, ¶39.

### 1. Evidence of Causation

¶12 Treider argues that there was no evidence of how or why Walter fell, no evidence that Walter would have been able to reach the handrail at the time of his fall if it had been there, and no evidence that he was conscious at the time of his fall to experience pain and suffering. However, Treider ignores the evidence that the jury did hear and fails to show that this evidence was insufficient. In our review, our "obligation is to search for credible evidence that will sustain the verdict, not for evidence to sustain a verdict the jury could have but did not reach." *Coryell*, 88 Wis. 2d at 317-18.

¶13 The record reflects ample evidence upon which the jury could make its findings. In support of how Walter fell, the Estate presented evidence of the conditions of the stairway and handrail safety. Dr. Alvaro Taveira, an expert in occupational and environmental safety and health, opined that Walter fell backwards while "ascending the stairs due to the lack of a handrail to assist him in maintaining his balance and lifting his weight on each step." The Estate argues that the facts support the inference that Walter was walking up the stairs after

doing laundry in the basement when he fell because Judith and Daniel testified that Walter regularly did laundry and there was laundry in the machine after his accident.

¶14     Robert Wozniak, an engineer, analyzed the stairway, noting that the middle metal bracket (of three) for the missing handrail had broken off and was found near Walter's body after the fall.  From the broken middle bracket, Dr. Taveira inferred that the fall happened above that level, around the seventh step from the bottom.  Although there were no visual witnesses to the fall, Judith and Daniel testified that they heard a single thump.  Dr. Taveira concluded that a single impact sound and the lack of blood along the wall indicated a single fall, and that with Walter's injuries supported a conclusion that he suffered a "high-energy, high-velocity impact."

¶15     In Wozniak's report, he reviewed a medical examiner's photograph of the scene, from which he formed a conclusion on the location of Walter's head immediately after the fall based on the evidence of blood on the wall, trim, and basement floor near the bottom of the stairs.  He testified that he used Walter's position to determine the minimum time it would take him to fall, calculated as at least 1.25 seconds from the middle of the stairs and at least 2 seconds from the top of the stairs.

¶16     In support of Walter's conscious pain and suffering, Judith testified that Walter had no complaints of ill health on the morning of October 5, 2020. Dr. Jeffrey Jentzen, a forensic pathologist, reported that Walter would have experienced mental anguish and conscious physical and psychological pain and

suffering in his fall and fatal impact on the basement wall.[5]  He found no proof of a brain injury from which to infer Walter had an immediate loss of consciousness.

¶17    Dr. Brad Grunert, a licensed psychologist, testified that based on his research on panic, terror, and trauma with patients who have experienced an impending injury, he observed that it takes .5 to 1 second for people to recognize an impending threat, at which point they experience panic.  If the person is aware of the threat for 1.75 to 2 seconds, they will experience terror.  He opined that based on medical records and reports, Walter was conscious during the fall, and that if Walter's fall was 1.25 seconds or less, he would feel panic; if his fall lasted for 2 seconds or more, he would have felt panic followed by terror.

¶18    Although Treider argued for a different interpretation of the evidence presented, it has not shown that "the inferences drawn by the jury … are completely speculative and unfounded."  *Morden*, 235 Wis. 2d 325, ¶71.  The Estate presented credible evidence from which a reasonable jury could find based on facts and reasonable inferences of those facts how Walter fell, how the missing handrail affected his fall, and whether he experienced conscious pain and suffering without the jury relying upon speculation and conjecture.  *See id.*, ¶¶38-39.

## 2.  *Time of Pain and Suffering*

¶19    Treider argues that the duration of pain and suffering presented by the Estate was so infinitesimal that the jury could not determine damages without resorting to speculation.  Treider argues that the Estate established that Walter felt

---

[5] There was no dispute over Walter's cause of death determined by the medical examiner: an acute cervical spinal cord injury due to blunt force trauma to the head and neck, which occurred when he fell down a flight of eleven stairs.

pain and suffering for at most 0.75 seconds, which is too small a time period for the jurors to have a foundation for their decision.

¶20 The Estate asserts that the jury's award should be upheld because there is credible evidence to support its findings and the verdict was not excessive.[6] "A damage award is a matter resting largely within the discretion of the jury, and is to be upset only where it is so excessive as to indicate that it resulted from passion, prejudice, or corruption, or a disregard of the evidence or applicable rules of law." ***Staskal v. Symons Corp.***, 2005 WI App 216, ¶38, 287 Wis. 2d 511, 706 N.W.2d 311.

¶21 The record reflects that the jury heard extensive testimony about Walter's fall and his conscious pain and suffering. Wozniak established that the time it would take Walter to fall down the stairs exceeded the threshold time to experience panic and terror from an impending injury established by Dr. Grunert. "[B]revity of … terror and anguish" does not mean that a damages award is "excessive" or "perverse." *See* ***Wosinski v. Advance Cast Stone Co.***, 2017 WI App 51, ¶¶89, 95, 97, 377 Wis. 2d 596, 901 N.W.2d 797. Further, the jury was properly instructed on considerations to determine an amount of damages for pain and suffering. We presume the jury follows instructions. *See* ***id.***, ¶94. This court will not substitute its judgment for the "good sense of jurors" and we sustain the judgment as ordered. ***Id.***, ¶98.

---

[6] To the extent that we interpret Treider as arguing that the time period of claimed pain and suffering was simply too small for the jury to make its findings, Treider offers no legal authority for this position. "Arguments unsupported by references to legal authority will not be considered." ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

## B. Admission of Expert Witness Testimony

¶22 Treider argues that the circuit court erred when it admitted the testimony of Dr. Taveira, Dr. Grunert, Dr. Jentzen, and Wozniak because their testimony failed to meet the *Daubert* standard.[7] It asserts that the opinions of the experts were conjecture dressed up as expert opinion and that their conclusions were not based on facts in evidence.

¶23 The admission of expert witness testimony is governed by WIS. STAT. § 907.02. "The court's gate-keeper function under the *Daubert* standard is to ensure that the expert's opinion is based on a reliable foundation and is relevant to the material issues." *State v. Giese*, 2014 WI App 92, ¶18, 356 Wis. 2d 796, 854 N.W.2d 687. Before admitting expert testimony, the circuit court makes five determinations:

> (1) whether the scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue; (2) whether the expert is qualified as an expert by knowledge, skill, experience, training, or education; (3) whether the testimony is based upon sufficient facts or data; (4) whether the testimony is the product of reliable principles and methods; and (5) whether the witness has applied the principles and methods reliably to the facts of the case.

---

[7] We note that not only had the circuit court already ruled on the admissibility of these expert witnesses under the *Daubert* standard, the parties stipulated on the record at the start of trial that neither was disputing the qualifications of the respective experts, based on their education and experience. To the extent that we interpret Treider's challenge to the experts' reliable foundation for their opinions to be a challenge to the expert's qualifications, we consider Treider to have waived this issue. *See Ceria M. Travis Acad., Inc. v. Evers*, 2016 WI App 86, ¶23, 372 Wis. 2d 423, 887 N.W.2d 904 (discussing waiver of right of review based on stipulation); WIS. STAT. § 807.05 (explaining that a stipulation is only binding if "made in court … and entered in the minutes or recorded by the reporter"); *Johnson by Kennedy v. Owen*, 191 Wis. 2d 344, 349, 528 N.W.2d 511 (Ct. App. 1995) ("A stipulation is a contract made in the course of judicial proceedings" that may relate to procedural matters and enforceable by WIS. STAT. § 807.05.).

*State v. Jones*, 2018 WI 44, ¶29, 381 Wis. 2d 284, 911 N.W.2d 97. This court "will not overturn a circuit court's admission of expert testimony unless the court failed to consider the relevant facts, failed to apply the proper standard, or failed to articulate a reasonable basis for its decision." *Id.*, ¶33.

¶24 The record reflects that the circuit court's oral ruling at the *Daubert* hearing was thorough and well-grounded in the law. The court concluded that each of these experts satisfied the criteria and offered reliable methodology for their testimony. It also asserted that the "proper method of dealing with any doubts surrounding the expert's testimony is through cross-examination." We agree. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

¶25 Treider objects that Dr. Taveira did not know exactly how or when Walter lost his balance. It also objects that Dr. Jentzen did not know why or if Walter was conscious when Walter fell.[8] Treider objects that Dr. Taveira, Dr. Jentzen, and Wozniak did not know why or how Walter fell.

---

[8] In his deposition, Dr. Jentzen rejected that there was any medical evidence to support that Walter was unconscious when he fell or that he fainted. We note with concern that Treider cites to its own appendix for the transcript of Dr. Jentzen's deposition. Citing to the appendix was improper and violates appellate rules. *See* WIS. STAT. RULE 809.19(1)(d),(e); *United Rentals, Inc. v. City of Madison*, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322. Although, it appears that the jury was shown the video deposition of Dr. Jentzen and the transcript was included in the appellate record by the Estate, this court is not required to "sift the record for facts to support counsel's contentions." *Nelson by Yost v. Schreiner*, 161 Wis. 2d 798, 804, 469 N.W.2d 214 (Ct. App. 1991).

¶26    Although Treider frames this argument as a lack of sufficient factual basis for the experts' opinions, these witnesses were not called as fact witnesses to the fall.  Treider extrapolates that not knowing details about the fall that an eyewitness would know means that the expert's opinions are baseless *ipse dixit*.  *Giese*, 356 Wis. 2d 796, ¶19 (quoting a translation of *ipse dixit* to mean "because I said so").  Treider does not discredit the reliability of the experts' methodology or that scientific, medical, or engineering knowledge could determine the cause of Walter's fall based on the information that was known.  *See* WIS. STAT. § 907.02(1); *Daubert*, 509 U.S. at 592

¶27    When a circuit court reviews a challenge to the admissibility of expert witness testimony, the "court is to focus on the principles and methodology the expert relies upon, not on the conclusion generated."  *Giese*, 356 Wis. 2d 796, ¶18.  Here, the circuit court did so.  Treider's challenge is not to the reliability or relevance of the expert testimony, but disagreement with the conclusions the experts reached.  When a litigant's "dispute is not with the science the expert relied upon … but with the assumptions the expert made," such "questions go to the weight of the evidence, not to its admissibility."  *Id.*, ¶28.  Treider has not identified an issue that could not be addressed in cross-examination.

¶28    Treider objects that Dr. Grunert should not have opined on a threshold of time at which a person facing an impending threat would experience panic and fear.  It argues that Dr. Grunert's research was based on interviews with people who did not die, therefore, it was not possible to know the emotional

reactions of people who did die.[9] It asserts that because each person is unique, it is impossible to know what pain and suffering Walter endured. However, as the Estate points out, the record reflects that Treider's own expert witness psychologist testified that research into the experience of terror or panic is not junk science and is a legitimate field of study. Treider does not develop an argument to dispute that Dr. Grunert's research is "good science" or derived from a valid scientific technique. *See Daubert*, 509 U.S. at 593-94.

¶29 We conclude that the circuit court's decision to allow the Estate to present testimony from these expert witnesses was not an erroneous exercise of discretion. *See Jones*, 381 Wis. 2d 284, ¶33. The court demonstrated a rational basis for its decision. *See Martindale v. Ripp*, 2001 WI 113, ¶29, 246 Wis. 2d 67, 629 N.W.2d 698.

### C. Jury Instruction on Spoliation

¶30 Treider argues that the circuit court wrongly instructed the jury on spoliation to allow a negative inference of Bernard's credibility. "If a potential litigant or party destroys, alters, or loses evidence in a manner that constitutes spoliation, the circuit court may impose sanctions for the spoliation of that evidence." *Mueller v. Bull's Eye Sport Shop, LLC*, 2021 WI App 34, ¶18, 398 Wis. 2d 329, 961 N.W.2d 112. "The decision to impose sanctions for improper

---

[9] The record reflects that Dr. Grunert testified that he worked with patients with significant physical and psychological injuries, including more than 1200 patients diagnosed with post-traumatic stress disorder and 200 people with panic disorders as a result of injuries, who generally survived injuries that they believed would kill them. He described that people experienced consistent patterns depending on how long a person was aware of an impending injury. He observed that it takes one-half to one second for people to recognize an impending threat, at which point they experience panic and react. If the person is aware of the threat for 1.75 to 2 seconds, they will experience terror.

spoliation of relevant evidence is generally within the [circuit] court's discretion." ***American Fam. Mut. Ins. Co. v. Golke***, 2009 WI 81, ¶39, 319 Wis. 2d 397, 768 N.W.2d 729.

¶31 Treider argues that the spoliation instruction prejudiced Treider because the jury was told they could find Bernard's testimony not credible because of his failure to produce and introduce into evidence a photograph of the stairway that he referenced during his testimony. Treider argues that the photograph was negligently and not intentionally deleted. However, as the circuit court observed in the order on the after-verdict motion, the "modified spoliation instruction" allowed the jury to use the "failure to produce documentation" to assess credibility, which is consistent with the general instruction that the jury is the ultimate judge of credibility.

¶32 We conclude that the spoliation instruction as given was an appropriate sanction. The circuit court acted within its discretion when it crafted the instruction to the facts and issues in this case. ***Id.***, ¶42 (discussing that "negative inference instructions … may be appropriate for spoliation where a party violated its duty to preserve relevant evidence").

### D. Improper and Prejudicial Arguments

¶33 Treider argues that the Estate made several improper and prejudicial arguments and relied upon inflammatory evidence. "A motion for a new trial based upon allegedly prejudicial argument by opposing counsel is addressed to the discretion of the [circuit] court." ***Wagner v. American Fam. Mut. Ins. Co.***, 65 Wis. 2d 243, 249, 222 N.W.2d 652 (1974).

¶34 Treider argues that the Estate improperly referenced the insurance company throughout the trial and asserted that it refused to settle, which created unfair bias against Treider. "Improper references to insurance are cause for a new trial only where prejudice results[.]" *Nimmer v. Purtell*, 69 Wis. 2d 21, 36, 230 N.W.2d 258 (1975). In the Estate's closing argument, its counsel referenced "[w]hat this family has had to go through … when they've had every opportunity to resolve it[.]" Treider objected and moved for mistrial.[10]

¶35 The Estate concedes that there were few references to the insurance company, which was a party to the lawsuit, but it argues none of them were improper.[11] Based upon our examination of the record, we conclude the insurance company was not referenced excessively or inappropriately; the references focused on its role employing Treider's attorney and in discovery.

¶36 In denying Treider's motion after verdict, the circuit court observed that it is not prejudicial to tell the jury that a case was unresolved, because every case that reaches a jury for resolution was one where the parties could not come to agreement before trial. The court concluded that the jury did not act to punish the insurance company, noting that it found both Walter and Treider negligent and the damages award of $1.5 million was only 30% of the amount suggested by the

---

[10] Although Treider moved for a mistrial several times throughout the trial, it does not argue on appeal that the circuit court erred when it denied the mistrial motions. We therefore do not address issues of mistrial.

[11] Under Wisconsin law, an injured person may file a direct action against the tortfeasor's insurer. WIS. STAT. § 632.24. Further, the circuit court should identify "all joined parties to the jury panel." *Stoppleworth v. Refuse Hideaway, Inc.*, 200 Wis. 2d 512, 515, 546 N.W.2d 870 (1996). Here, the Estate filed a direct action against Auto-Owners Insurance Company as well as an action against Treider. Therefore, the insurance company is a party to this matter and not to be hidden from the jury.

Estate. We agree. Treider has not established prejudice from references to the insurance company.

¶37 Next, Treider argues that the Estate was able to make improper arguments because the circuit court allowed a photograph into evidence and permitted Judith to testify while holding a teddy bear, and it contends that these items were inflammatory and aroused the jury's sympathy. "We review a circuit court's decision to admit or exclude evidence under an erroneous exercise of discretion standard." *Martindale*, 246 Wis. 2d 67, ¶28. The photograph was taken by the medical examiner and showed Walter's face and some of his bloody head wound, and was admitted as evidence during Daniel's testimony. The second item was a teddy bear fashioned from a shirt Walter used to wear; Judith testified that she kept it by the television and talked to it at night, just as she did with Walter when he was alive, and the court allowed her to hold the bear while she testified. Treider asserts that the photograph was unnecessary because there was no dispute that Walter sustained head injuries, and that the teddy bear was created after Walter's death and was not relevant to the legal action.

¶38 Treider has not shown that the decisions on the photograph or teddy bear were an erroneous exercise of discretion. Although the Estate requested additional photographs, the circuit court allowed a single photograph that demonstrated the nature of Walter's injuries. The court allowed Judith to testify with the teddy bear, but it was not to be presented as direct testimony of her feelings of loss, and it was not admitted as evidence. The record reflects that the circuit court reviewed many proffered exhibits, heard the parties' arguments, considered the relevant statutes, and used a rational process to reach a reasonable conclusion to balance admission of relevant, probative evidence without unfair prejudice. *See id.*

¶39 Finally, Treider argues that the Estate's counsel cried during closing arguments, inflaming the jury. The Estate denies that its counsel cried during the trial. The record reflects that Treider made contemporaneous objections to what it considered undue emotion, and the Estate's counsel denied crying at that time.

¶40 Treider has not shown that the Estate's closing argument affirmatively affected the verdict. This "court must be convinced that the verdict reflects a result which in all probability would have been more favorable to the complaining party but for the improper argument." *Wagner*, 65 Wis. 2d at 250. There was considerable emotion reflected in the Estate's closing arguments, but there was also ample technical, factual evidence upon which the jury could make their findings without taking into account counsel's emotion. We conclude that the circuit court's decision to deny the motion for a new trial or mistrial a reasonable exercise of discretion. *See id.*

¶41 Ultimately, we conclude that all of Treider's arguments fail. We reject its request for a change in the jury verdict or a new trial. We therefore affirm the judgment and order.

## II. The Estate's Cross-Appeal

¶42 The Estate argues that WIS. STAT. § 895.04(4), which provides a $350,000 cap on damages for loss of society and companionship for a deceased

adult, is unconstitutional on its face and as applied to this case.[12]  It asserts that the statutory cap violates equal protection by treating plaintiffs with damage awards over $350,000 differently than plaintiffs with damage awards under $350,000, and by treating plaintiffs differently based on the date of the jury award.

¶43    "We generally presume that statutes are constitutional." *League of Women Voters of Wis. Educ. Network, Inc. v. Walker*, 2014 WI 97, ¶16, 357 Wis. 2d 360, 851 N.W.2d 302.  To overcome the presumption of constitutionality, a challenger has a heavy burden to prove that the statute is unconstitutional beyond a reasonable doubt.  *Id.*, ¶17.  Both a facial challenge and an as-applied challenge to the constitutionality of a statute present questions of law that we review independently.  *Mayo v. Wisconsin Injured Patients & Fams. Comp. Fund*, 2018 WI 78, ¶23, 383 Wis. 2d 1, 914 N.W.2d 678.

¶44    As the Estate's challenge does not implicate a fundamental right or regulation of a protected class, we apply rational basis scrutiny, "where statutes are upheld if there is any rational basis for the legislation." *Id.*, ¶¶28-29.  "Under the rational basis test, a statute is unconstitutional if the legislature applied an irrational or arbitrary classification when it enacted the provision." *Aicher ex rel. LaBarge v. Wisconsin Patients Comp. Fund*, 2000 WI 98, ¶57, 237 Wis. 2d 99, 613 N.W.2d 849.  We will uphold a statute unless we conclude it is "patently

---

[12] Treider argues that the Estate's constitutional challenge to the statutory cap was waived by not objecting during the jury instruction conference, by not raising the constitutional claim before the after-verdict motions, and by not serving certain governmental offices as required by law, pursuant to WIS. STAT. § 893.825.  Although the circuit court expressed concern that it lacked competency to hear the constitutional challenge, we conclude this challenge was not waived.  The Estate was not challenging a jury instruction, but the constitutionality of a statute.  After the statutory cap was applied was the appropriate time for the Estate to raise the issue, which it did in the after-verdict motion.  The record reflects that the appropriate government parties were served.

arbitrary and bears no rational relationship to a legitimate government interest." *Mayo*, 383 Wis. 2d 1, ¶40 (citation modified).

¶45    In the Estate's facial challenge to the statutory cap, it "must show that the statute 'treats members of similarly situated classes differently.'" *Id.*, ¶37 (citation omitted).  The Estate argues that there are two ways to consider dissimilar treatment of similarly situated persons.  First, the statutory cap creates two classes: those who are fully compensated for their loss of society with the damages awarded by the jury and those who are not fully compensated.  Second, it contends that the statutory cap creates different classes dependent on when the damages were awarded, namely because there is no inflationary or other adjustment scale to the cap and it has remained unchanged since enactment in 1997.  *See* 1997 Wis. Act 89.  The Estate provides statistics from the U.S. Labor Bureau that $350,000 in April 1998 is the equivalent of $672,715.08 in March 2024 (the month before the verdict in this case).

¶46    A legislative classification satisfies the rational basis test if it meets five criteria:

> (1) All classifications must be based upon substantial distinctions which make one class really different from another.
>
> (2) The classification adopted must be germane to the purpose of the law.
>
> (3) The classification must not be based upon existing circumstances only.  It must not be so constituted as to preclude addition to the numbers included within a class.
>
> (4) To whatever class a law may apply, it must apply equally to each member thereof.

(5) That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.

*Aicher*, 237 Wis. 2d 99, ¶58 (citation modified).

¶47 First, we determine whether the classification of those whom a jury has awarded more that $350,000 in damages for loss of society and companionship is substantially different than those awarded less. *Id.* "This distinction is obviously 'real' as a person who fits into the former category cannot also be part of the latter." *Mayo*, 383 Wis. 2d 1, ¶44. This holds true for when we consider the Estate's proposed time classification as well. The first criterion is satisfied.

¶48 Second, we consider whether the classification is "germane to the purpose of the law." *Aicher*, 237 Wis. 2d 99, ¶58 (citations omitted). The right to bring a wrongful death action is "purely statutory"; there is no common law action. *Chang v. State Farm Mut. Auto. Ins. Co.*, 182 Wis. 2d 549, 560, 514 N.W.2d 399 (1994). Wisconsin's wrongful death statutory framework provides conditions for liability under WIS. STAT. § 895.03 and governs the right to recover, limits on who may recover, and the terms of recovery, as well as the total recovery allowable by law under WIS. STAT. § 895.04. *See Chang*, 182 Wis. 2d at 560-61; *Force ex rel. Welcenbach v. American Fam. Mut. Ins. Co.*, 2014 WI 82, ¶¶36-37, 42-43, 356 Wis. 2d 582, 850 N.W.2d 866. As the statute sets the maximum recovery, classifications divided by the damages award amount or the date of the award is germane. We consider the second criterion satisfied.

¶49 Third, we consider whether the classification is based "on existing circumstances only." *Aicher*, 237 Wis. 2d 99, ¶58 (citations omitted). There is

nothing in the statute to limit the classes based on damages award by amount or date, and nothing bars additional members in the future. The third criterion is satisfied.

¶50    Fourth, we consider "whether the cap applies equally to the members of each class created." *Mayo*, 383 Wis. 2d 1, ¶53. The Estate argues that the cap does not apply equally because there are people who are unable to recover the damages the jury awarded over $350,000 and that there are tortfeasors who will not be held fully accountable. It further asserts that because there is no adjustment to the capped amount, the cap does not apply equally to people with more recent awards due to the ongoing, diminishing value. In *Mayo*, our supreme court explained that a noneconomic damages cap applied equally when every individual had the same capped recovery, regardless of the damages awarded. *Id.* The statutory cap is also the same for every person in every class created. Therefore, the fourth criterion is satisfied.

¶51    Fifth, we consider whether "a need for substantially different legislation arises because" a class is "reasonably distinct" from other classes. *Aicher*, 237 Wis. 2d 99, ¶75. In other words, whether the characteristics of each class are different enough to "'reasonably suggest' legislation that is for the public good." *Mayo*, 383 Wis. 2d 1, ¶54. Wisconsin law has long provided a statutory cap on recovery for wrongful death claims by family members. As the legislature periodically increased that statutory cap on loss of society, the legislature was also creating different classifications of available remedy, based on both the date of injury and the amount of the jury award. *See Neiman v. American Nat'l Prop. &*

*Cas. Co.*, 2000 WI 83, ¶26 & n.6, 236 Wis. 2d 411, 613 N.W.2d 160.[13]  On that basis, we consider the classifications reasonable.  The fifth criterion is satisfied.

¶52    Because all five criteria of the *Aicher* rational basis test have been satisfied, we conclude that the Estate has failed to show the cap on loss of society damages is unconstitutional beyond a reasonable doubt.  Its facial challenge fails. *See Mayo*, 383 Wis. 2d 1, ¶55.  We acknowledge and share the Estate's frustration that the statutory cap does not take inflation into account and the legislature has not adjusted the amounts in almost thirty years, "it is the duty of this court to apply the policy the legislature has codified in the statutes, not impose our own policy choices[.]" *Columbus Park Hous. Corp. v. City of Kenosha*, 2003 WI 143, ¶34, 267 Wis. 2d 59, 671 N.W.2d 633.  The amount of the statutory cap on damages for loss of society (and the decision to have a damages cap at all) is a policy decision that we are required to enforce.

¶53    We now turn to the Estate's as-applied challenge to WIS. STAT. § 895.04(4).  An as-applied challenge does not challenge the constitutionality of the statute, but whether the statute has been applied in a constitutional manner. *Mayo*, 383 Wis. 2d 1, ¶56.  The Estate has the burden to prove beyond a reasonable doubt that the statutory cap, as applied here to limit Judith's recovery, is unconstitutional.  *See Society Ins. v. LIRC*, 2010 WI 68, ¶27, 326 Wis. 2d 444,

---

[13] When the statutory cap was last increased for injuries occurring after April 1998, our supreme court refused to retroactively apply the increase for persons injured before the new cap's effective date because to do so would "unfairly alter[] settled property rights without achieving a broad public benefit." *Neiman v. American Nat'l Prop. & Cas. Co.*, 2000 WI 83, ¶2, 236 Wis. 2d 411, 613 N.W.2d 160.  While not a constitutional challenge to the statutory cap, *Neiman* recognized that relatives of decedents in wrongful death actions would have different maximum recoveries based on the date of injury.  This acknowledges that different classes were created by the statutory cap.

786 N.W.2d 385. We again apply a rational basis review. *Mayo*, 383 Wis. 2d 1, ¶58.

¶54    The Estate argues that the jury awarded Judith $5 million for loss of society; however, her recovery is limited to $350,000 by operation of the statutory cap, reducing the fair compensation by 93%. Our supreme court has discerned that our wrongful death statutes have a "dual legislative purposes … to impose liability on the wrongdoer" and to "allow recovery by the deceased's relatives who would have recovered had the deceased lived." *Force*, 356 Wis. 2d 582, ¶¶9, 14. The Estate asserts that there is no valid legislative purpose in reducing Judith's recovery by 93% and denying her the fair recovery awarded by the jury.

¶55    The Estate's argument fails for the same reason the as-applied challenge failed in *Mayo*. Even though *Mayo* dealt with a different statutory damages cap, we cannot accept the Estate's argument without contradicting the analysis set forth in *Mayo*, and only the supreme court can reverse course on that analysis. *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

¶56    In *Mayo*, the Mayo family argued their noneconomic damages for medical malpractice had been reduced by 95.46%; however, they did not explain how they were "treated differently than other similarly-situated persons." *Id.*, 383 Wis. 2d 1, ¶61. Our supreme court concluded that under the operation of a medical malpractice statutory cap, the Mayo family was treated the same as any other person for whom the jury awarded noneconomic damages in excess of the cap. *Id.*, ¶62. The court reasoned that the cap applied regardless of the amount of the award in excess of the cap, the severity of injuries, the extent of the healthcare provider's culpability, or the emotional response and sympathy evoked. *Id.*

¶57 We reach the same result here. Consistent with *Mayo*, the statutory cap applicable here does not limit the damages the jury may award a plaintiff, it is a limit on what a plaintiff may recover. *See Chang*, 182 Wis. 2d at 565. Therefore, the percentage of the jury's award is not a measure of its fairness. The Estate has not shown an unequal application of the statutory cap. It has not shown that the statutory cap as applied to them was arbitrary and not related to a legitimate government interest. *See Aicher*, 237 Wis. 2d 99, ¶57. We conclude that the statutory cap is not unconstitutional as-applied to Judith's recovery. We acknowledge that the reduction in Judith's award for loss of society damages is severe; however, the determination of caps on damages awards is a policy decision. "Policy decisions are left to the legislature." *Milwaukee J. Sentinel v. City of Milwaukee*, 2012 WI 65, ¶37, 341 Wis. 2d 607, 815 N.W.2d 367.

## CONCLUSION

¶58 We affirm the judgment and order in favor of the Estate. For the reasons stated above, we conclude that Treider's arguments fail. We conclude that the Estate's facial and as-applied challenge to the constitutionality of the statutory cap pursuant to WIS. STAT. § 895.04(4) fails. No costs awarded to either party.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.